486 A.2d 189

**Paul Otis WARRICK**

v.

**STATE of Maryland.**

**No. 52, Sept. Term, 1984.**

Court of Appeals of Maryland.

Jan. 10, 1985.

Gary S. Offutt, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), specially assigned.

RODOWSKY, Judge.

This criminal case involves pretrial discovery—specifically, the disclosures which the Maryland Rules required the State to make without any request from the accused.

Petitioner, Paul Otis Warrick (Warrick), was convicted of armed robbery, storehouse breaking, and carrying a dangerous weapon openly with the intention of injuring another. The victim is Christopher David Parker (Parker), the part owner of a produce stand in Prince George's County. Sometime after midnight on August 4, 1982, a silent alarm at the produce stand sounded in Parker's home and he went to investigate. Lights which were intentionally left burning at night illuminated the business premises. The lock on a gate which formed part of the storehouse had been cut. Parker saw Warrick loading goods into an automobile and told Warrick to put the goods back. When Parker approached Warrick, the latter brandished a hunting knife at Parker and Parker backed off. Warrick then entered the automobile and drove away.

The record made at the hearing on various pretrial motions filed by the defendant reveals the descriptions given by Parker to the police. He described the robber's automobile as a 1967 blue Chevrolet bearing Virginia license plates No. ASU 275. The police learned that those plates were registered to a female whose last name was Warrick. Parker described the robber as a black male, six feet tall, approximately 180 pounds, with short hair, and wearing a blue and gray baseball type shirt with the word "Sassoon" on the front. Parker described the weapon as a "buck knife," a type of hunting knife which can be folded and carried in a case attached to a belt around the waist.

The police broadcasted these descriptions, and at about 2:00 a.m. officers found the Chevrolet, unattended, with a flat tire, and in a ditch. In the car were cartons of eggs and of soda.

At about 2:30 that same morning Pfc. Raymond Kidwell, Jr., and Pvt. Dwight S. DeLoatch of the Prince George's

County Police Department observed Warrick, who was still wearing the same distinctive shirt, in an outdoor telephone booth. Warrick admitted to the officers that he had been driving a 1967 blue Chevrolet Malibu with Virginia plates. They arrested Warrick and searched him. The search revealed a buck knife in a case on Warrick's belt.

The officers transported Warrick to the site of the abandoned Chevrolet where the victim, Parker, had gone to identify merchandise found in the car. Officer Kidwell brought Parker over to the police cruiser where Warrick and Officer DeLoatch were seated in the rear with the interior light on. Parker identified Warrick as the robber. Indeed, Parker had recognized the robber to be a man who had applied to Parker for a job at the produce stand a day or two before the robbery.

While in a police station at about 6:30 a.m., Warrick gave an oral statement in which he admitted most of the material facts of the crimes of which he was convicted. According to the police Warrick also said that he had brandished the opened knife at Parker because Warrick thought that Parker was going to jump him. At the pretrial hearing Warrick's position was that he was too drunk to remember any of the events.

The discovery stage of this prosecution was governed by former Maryland Rule 741 a 2 (now MD.R. 4–263(a)(2)). It required the State, "[w]ithout the necessity of a request by the defendant," to furnish to the defendant

> [a]ny relevant material or information regarding: (a) specific searches and seizures, wire taps and eavesdropping, (b) the acquisition of statements made by the defendant, and (c) pretrial identification of the defendant by a witness for the State.

Four aspects of the case fell under this discovery rule when the State made its initial disclosures. Those were (1) the search of Warrick's person incident to his arrest and the seizure of the knife; (2) any search of the Chevrolet and any seizure of property contained in it; (3) the acquisition of

Warrick's oral statement; and (4) Parker's identification of Warrick in the showup.

Because the State's Attorney for Prince George's County had discontinued his previous policy of giving open file discovery, the prosecutor in this case prepared a written discovery statement in attempted compliance with Md.R. 741 a 2. The full text of that statement is set forth in the margin.[1]

By a motion to compel discovery Warrick challenged the sufficiency of the State's disclosures.[2] The motion included requests for "all relevant information" regarding the two searches, the showup, and the statement. When, at the hearing on this motion, the court pressed defense counsel to state what the prosecution had omitted, counsel asserted

---

1.     1.  On August 4, 1982, at approximately 0230 hours the defendant was arrested and searched by Pfc. Kidwell and Pvt. DeLoatch and a knife was recovered from the defendant. On August 4, 1982 at approximately 0220 hours a 1967 Chevrolet, Virginia Tag ASU–275 was searched by Pvt. Padgett and items including cartons of Coca-Cola, Root Beer, Sprite, and Tab, and potatoes and eggs were recovered. The car was located in a ditch in the 1700 block of Palmer Road, Oxon Hill, Maryland.

2.  On August 4, 1982, at approximately 0230 hours the defendant told Pfc. Kidwell and Pvt. DeLoatch that he was calling the police to report that his 1967 Blue Chevrolet Malibu had been stolen. On the same date at approximately 0630 hours the defendant was advised of his rights and told Det. DeHof that he went to the victim's place and took items until he was interrupted by the victim who told him to put the items back. The defendant said he asked the victim to help him replace the items and not to charge him. He said the victim would not agree and he was afraid the victim would jump him so he pulled the knife and drove away. The defendant said he then had a flat tire and drove into a ditch.

3.  On August 4, 1982, at approximately 0240 hours the victim observed the defendant in a police cruiser and identified him as his assailant.

2.  Md.R. 741 e 2 dealt with the motion to compel discovery. In relevant part it read:

If discovery is not furnished as requested, a motion to compel discovery may be filed within ten days after receipt of the discovery or after discovery should have been received, whichever is earlier. The motion shall specifically describe the matters requested which have not been furnished.

that she was entitled to know (a) the identity of every person who was with the victim and of every person who was with the defendant at the time the identification was made, (b) the length of time which the identification procedure took, and (c) the substance of any conversations between the victim and the police and between the defendant and police relating to the identification.

The trial court denied Warrick's motion. In substance it reasoned that a literal application of Md.R. 741 a 2 would make the State investigate for the accused. Applying that standard to this case, the circuit court held that "the time, the date and where [the I.D.] happened [were] as much relevant information as [the State] is required to give [the accused]." [3]

The pretrial hearing then turned to motions to suppress and resulted in the following rulings. The buck knife would be admissible because the police seized it in a search incident to a valid arrest. The warrantless arrest was valid because, among other factors bearing on probable cause, Warrick matched the description of the robber which had been broadcasted. The court would not suppress goods seized from the car because Warrick failed to show that he had any standing. The oral statement was voluntary in the court's view. No impermissible suggestion tainted the showup identification. On this point Parker and the policeman who was seated in the police cruiser with Warrick testified. Officer Kidwell, who was outside of the cruiser with Parker at the time, did not testify.

---

**3.** Elaborating on why he would give Md.R. 741 a 2 a narrow construction the motions judge, who did not preside at trial, said:

The rule of course is drawn in language meaning absolutely nothing as we all know who practice law or have to listen to others practice it. The rule was drawn by people who obviously do not understand what it means to use the rule. Any relevant information is ridiculous. Does [the Assistant State's Attorney] have to give [defense counsel] the weather report? Does [the Assistant State's Attorney] have to give [defense counsel] the phase of the moon?

Trial on the merits was without a jury. The knife was introduced. Parker testified, without objection, to his pretrial identification of Warrick, and Parker confirmed to be his the property listed in an inventory of items recovered from the Malibu. The State did not, however, introduce Warrick's oral statement. The defense did not present any case.

Warrick was convicted, he appealed, and the conviction was affirmed. His appeal did not contest the circuit court's ruling that he lacked standing to challenge any search of the Malibu. In an unreported per curiam opinion the Court of Special Appeals held that under Md.R. 741 a 2 the accused "was not entitled to *all* relevant information in possession of the State's Attorney ...." (Emphasis in original.) Rather, that court saw

> [t]he objective of the discovery rule [to be] to assist the defendant to prepare his defense and to protect him from surprise. It was never intended to give the defendant the benefit of the disclosure of all the information developed by the diligence in investigation of the State.

We granted Warrick's petition for certiorari.

As framed in the petition the question is: "Did the trial court err when it denied Petitioner's Motion to Compel Discovery?" We are concerned, however, only with the seizure of the knife and with the showup. Issues relating to any search of and seizure from the Malibu have not been preserved for appellate review under Md.R. 813 a. Nor was there any testimony at trial on the merits about Warrick's oral statement. Warrick's questions as to these two objects of discovery during the preliminary phases of this prosecution have not survived as issues for reasons having nothing to do with the alleged failure to furnish Warrick with discovery to which he was entitled.

With respect to the knife and the showup, the analyses by the courts below and in the State's brief fail to give effect to the July 1, 1977, amendment of the criminal causes discovery rule. We reviewed the history of Md.R. 741 a in

*White v. State,* 300 Md. 719, 481 A.2d 201 (1984), which was decided after the Court of Special Appeals had ruled in this case. *White* referred to the American Bar Association's Standards Relating to Administration of Criminal Justice, Discovery and Procedure Before Trial (1970). Under § 2.3 of those proposals the prosecution would be required, on request, to disclose " 'any relevant material and information' " regarding specific searches and seizures and the acquisition of specified statements. 300 Md. at 734, 481 A.2d at 208. That report led to a local study. *See* Joint Committee of the Maryland Judicial Conference and of the Maryland State Bar Association, Report and Recommendations to Implement the American Bar Association's Standards for Criminal Justice (1974). It included a recommendation that the Maryland criminal discovery rule embrace the ABA proposal and also extend to the pretrial identification of the defendant by a witness for the State. *Id.* at 12. The joint committee recognized that under its recommendations "[t]he material and information ... that the State's Attorney must disclose to the defense on request is more extensive than the material discoverable by the defendant under the present Rule ...." *Id.* at 24–25. Those recommendations also included a mandatory pretrial motions rule similar to former Md.R. 736 a and b, which was in effect when Warrick's discovery exceptions were heard and which is now MD.R. 4–252(a) and (b). The joint committee saw the following relationship between a mandatory pretrial motions rule and the discovery rule.

> [T]he defendant can obtain relevant material or information about specific searches and seizures, interrogations, or identifications. While this provision is new to Maryland, it is an essential component of the committee's recommendation ... on the mandatory filing of pretrial motions to suppress or exclude illegally obtained evidence. The defendant cannot be expected to file such motions prior to trial unless he can obtain the necessary information to prepare for the suppression or exclusion hearing. [*Id.* at 26.]

■  *White* traced how this Court's Rules Committee utilized the language of the Joint Committee Report in formulating Md.R. 741 a 2.  *White* further demonstrated that the purpose of Md.R. 741 a 2 was " 'to furnish the defendant with relevant material or information that would force the defendant to file a motion to suppress, prior to trial.' "  300 Md. at 735, 481 A.2d at 209.  To carry out that design, the rule as proposed to and adopted by this Court made certain categories of disclosures by the State mandatory and not dependent upon a request by the accused.  *Id.*

This background explains the rule's reference to "[a]ny relevant material or information," which troubled the courts below.  The philosophy of the rule prior to July 1, 1977, allowed the State to hold its cards close to its vest in a given case.  After July 1, 1977, the emphasis of Md.R. 741 a 2 is on moving the mass of criminal cases through the system by expediting pretrial suppression hearings and dispositions without trial.  One feature of the price paid for that expedition is that the State undoubtedly will be obliged in many cases to furnish the defendant with material developed by the State's investigation.

There are, nevertheless, limitations on the State's obligations under Md.R. 741 a 2.[4]  The face of Md.R. 741 a discloses at least three.  First, Md.R. 741 a 2 is concerned only with the subjects specified in parts (a), (b), and (c).  Second, Md.R. 741 a 3 limits that which is discoverable under Md.R. 741 a 2 to "material and information in the possession or control of [the State's Attorney, of] members of his staff and of any others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular case have reported to his office."  Third, the information must be relevant.  This is the same limitation which courts tradi-

---

4.  Of course, Md.R. 741 a 2 does not obligate the State to produce privileged material.  *See* Md.R. 741 c (now 4–263(c)).  Also, under Md.R. 741 g (now 4–263(i)) the Court may issue a protective order limiting discovery "on motion and for good cause shown."

tionally apply and which turns on the legal issues under the facts and circumstances of the case. But relevancy is not limited to material or information which would tend to support a motion to suppress. Material or information is also produceable under Md.R. 741 a 2 if it supports the State's proposed use of validly obtained material or information and the denial of a defendant's suppression motion.

Further, former Md.R. 701 expressly articulated the general policy which implicitly governed all applications of the Maryland Rules. A court is to construe a rule, "to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." Under those standards the disclosure under Md.R. 741 a 2 and its successor need only be a simple but fair statement of the relevant information.

The State also argues that "[a]ny relevant material or information" in Md.R. 741 a 2 must be given a restricted meaning to avoid making much of Md.R. 741 b surplusage.[5]

---

5. Former Md.R. 741 b read:
    b. *Discovery by the Defendant.*
    Upon the request of the defendant, the State shall:
      1. Witnesses.
    Disclose to the defendant the name and address of each person then known whom the State intends to call as a witness at the hearing or trial to prove its case in chief or to rebut alibi testimony.
      2. Statements of the Defendant.
    As to all statements made by the defendant to a State agent which the State intends to use at a hearing or trial, furnish the defendant: (a) a copy of each written or recorded statement and (b) the substance of each oral statement and a copy of all reports of each oral statement.
      3. Statements of Codefendants.
    As to all statements made by a codefendant to a State agent which the State intends to use at a hearing or trial, unless a severance has been ordered by the court, furnish the defendant: (a) a copy of each written or recorded statement, and (b) the substance of each oral statement and a copy of all reports of each oral statement.
      4. Reports of Experts.
    Produce and permit the defendant to inspect and copy all written reports or statements made in connection with the particular case by each expert consulted by the State, including the results of any physical or mental examination, scientific test, experiment or comparison, and furnish the defendant with the substance of any oral

There is no duplication between the two subsections when applied to the facts of this case. As to the showup, Md.R. 741 b 1 required only that Parker be identified in response to Warrick's request while Md.R. 741 a 2 operated more broadly, depending on what information certain State agents possessed. As to the knife, Md.R. 741 b 5 would permit inspection of the knife itself while Md.R. 741 a 2 was concerned with the circumstances under which the police seized the knife.

For all of these reasons we conclude that the circuit court applied too narrow a standard in ruling upon Warrick's motion to compel discovery. It by no means follows, however, that the judgment of conviction must be reversed as Warrick requests. This is because the record does not demonstrate whether or not there was any material or information which the State possessed and which it should have produced under a proper interpretation of Md.R. 741 a 2. For example, defense counsel argued to the circuit court that the State was obliged to disclose any conversation between the police and Parker prior to the showup which was relevant to Parker's identification of Warrick. There may have been none. More to the point, information regarding any such conversation may not have been within the possession and control of a person described in Md.R. 741 a 3. If that is the fact of the matter, there would have

---

report and conclusion made in connection with the particular case by each expert consulted by the State, including the results of any physical or mental examination, scientific test, experiment or comparison.

5. Evidence for Use at Trial.

Produce and permit the defendant to inspect and copy any books, papers, documents, recordings, or photographs which the State intends to use at the hearing or trial, and produce and permit the defendant to inspect and photograph any tangible objects which the State intends to use at a hearing or trial.

6. Property of the Defendant.

Produce and permit defendant to inspect, copy and photograph any item obtained from or belonging to the defendant, whether or not the State intends to use the item at the hearing or trial.

been no violation by the State as to that aspect of the motion to compel discovery.

■ Further, when a discovery violation comes to light in the course of trial, whether any sanction is to be imposed and, if so, what it is to be, is in the first instance committed to the discretion of the trial judge. *See Colter v. State,* 297 Md. 423, 466 A.2d 1286 (1983); *Taliaferro v. State,* 295 Md. 376, 456 A.2d 29, *cert. denied,* 461 U.S. 948, 103 S.Ct. 2114, 77 L.Ed.2d 1307 (1983). The exercise of that discretion includes evaluating whether a discovery violation has caused prejudice. When asked to grant a mistrial as a sanction for a discovery violation by the State which was revealed during trial a circuit judge would look at the record as a whole to determine whether the matter omitted from a formal discovery production by the State had nevertheless been timely communicated to or known to the defense in some other way.

We can take an illustration of the foregoing concept from the record in this case. The motions judge was of the view that the only relevant information to which the defendant was entitled in addition to that furnished in the State's formal discovery production was disclosure of the place where the showup identification had occurred. While that fact was not included in the State's formal discovery production, *supra* note 1, the statement of charges served on Warrick advised that he had been identified by the victim at the scene where the police had recovered the car "abandoned" by the robber. In addition, Officer DeLoatch testified at the suppression hearing that while he was seated next to Warrick in the police cruiser at the time of the showup, Warrick recognized Parker as a person whom Warrick had recently asked for a job.

Whether the State did in fact fail to disclose discoverable information and, if so, whether the violation caused any prejudice are inquiries collateral to the trial of this case on its merits. If a full record demonstrated there was no discoverable information which was not disclosed, there

could have been no violation of Md.R. 741 a 2. If a complete record demonstrated that there was a violation but that it was nonprejudicial, it should not be the basis for a reversal of the conviction. When confronted with similar unanswered factual questions about collateral matters in other criminal cases, we have invoked MD.R. 871 a and remanded without affirmance or reversal in order to have the record amplified. See *Mahammitt v. State,* 299 Md. 82, 472 A.2d 477 (1984), *Grant v. State,* 299 Md. 47, 472 A.2d 459 (1984), and *Pennington v. State,* 299 Md. 23, 472 A.2d 447 (1984), all involving remands to determine circumstances surrounding continuances in order to apply former Md.R. 746; and *Wiener v. State,* 290 Md. 425, 430 A.2d 588 (1981), involving a remand to determine whether the presence of a covert agent of the Attorney General in a Public Defender's office had prejudiced the defendant's right to counsel.

We shall therefore remand the instant case for further proceedings. The circuit court should determine, consistently with the foregoing interpretation of Md.R. 741 a 2, whether in fact the State violated that discovery requirement. If the court finds no violation occurred, the judgment of conviction will stand and Warrick may appeal the trial court's determination. If the trial court determines that there was a violation of the rule, then it shall determine whether prejudice resulted to Warrick either in the presentation of his motions to suppress or at trial on the merits. On this issue, the burden will be on the State to satisfy the circuit court beyond a reasonable doubt that there was no prejudice. If the State carries that burden, Warrick's conviction will stand and he may appeal the determination of no prejudice. If the trial court cannot conclude beyond a reasonable doubt that Warrick was not prejudiced by any discovery violation which it may find to have occurred, then the trial court is to award Warrick a new trial.[6]

---

6. Warrick's petition for certiorari embraced a second question, namely, "Did the trial court err when it refused to permit defense counsel

CASE REMANDED, WITHOUT AFFIRMANCE OR RE-
VERSAL, TO THE COURT OF SPECIAL APPEALS OF
MARYLAND FOR REMAND TO THE CIRCUIT COURT
FOR PRINCE GEORGE'S COUNTY FOR THE PURPOSE
OF FURTHER PROCEEDINGS CONSISTENT WITH
THIS OPINION.

COSTS IN THE CIRCUIT COURT FOR PRINCE
GEORGE'S COUNTY, IN THE COURT OF SPECIAL AP-
PEALS, AND IN THIS COURT TO ABIDE THE RESULT.

to review a police report for the purpose of cross-examining the police
officer who made the report during a motion to suppress?" The Court
of Special Appeals answered this question adversely to Warrick on the
merits and, as an alternative ground of decision, held that the trial
court error, if any, was harmless beyond a reasonable doubt. War-
rick did not include in his petition for certiorari a request that we
review the harmless error issue and we therefore do not consider it.
*See Coleman v. State,* 281 Md. 538, 547, 380 A.2d 49, 55 (1977);
*Dempsey v. State,* 277 Md. 134, 355 A.2d 455 (1976). Because the
intermediate appellate court's judgment on this second issue must be
affirmed in any event on the harmless error rationale, certiorari was
improvidently granted on the second question. We now dismiss the
writ of certiorari as to that question.