757 A.2d 796

**Larry Marcus JOHNSON**

v.

**STATE of Maryland.**

**No. 102, Sept. Term, 1999.**

Court of Appeals of Maryland.

Aug. 18, 2000.

Peter F. Rose and Julia Doyle Bernhardt, Assistant Public Defenders (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Steven L. Holcomb, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

HARRELL, Judge.

Larry Marcus Johnson, Petitioner, was convicted in the Circuit Court for Anne Arundel County of fourteen counts of theft over $300. He appealed to the Court of Special Appeals, arguing that the Circuit Court erred because it refused to compel the State to provide the defense with a copy of Petitioner's pre-trial recorded statement[1] and yet permitted the State, over Petitioner's objection, to adduce at trial the testimony of one of Petitioner's police interrogators concerning his version of the inculpatory content of that statement. The intermediate appellate court rejected Petitioner's argument and affirmed his convictions. We granted certiorari[2] to consider the following questions posed by Petitioner:

I. Whether the State is required to provide to the defense the defendant's recorded statement where, instead of introducing the recording at trial, it adduces the substance of the statement through the testimony of a police officer.

II. Whether, where the State has failed to provide to the defense the defendant's recorded statement, it may introduce the substance of that statement at trial through a police officer.

III. Whether the Court of Special Appeals erred in this case in holding that the admission of the oral summary at trial was not error under Maryland Rules 5–1002 and 5–1004.

We hold that the State was required to furnish the defense with Petitioner's recorded statement under Maryland Rule 4–263(b)(2)(A) and reverse. We need not, and do not, decide any other aspect of Petitioner's questions.

---

1. There is ambiguity in the record whether more than one recorded statement exists and whether the statement (or statements) were audio or video recorded, or both. Most of the references mention a video-taped statement. We have adopted for the purposes of this opinion the characterization of the item or items in question as a "recorded statement."

2. *Johnson v. State,* 356 Md. 495, 740 A.2d 612 (1999).

## I.

On the evening of 2 August 1996, Officers Lewis J. Mangione, Jr. and Zachary Miller, of the Bel Air Police Department, responded to a call for a burglary at a house on Old Orchard Road in Harford County. Officer Mangione chased one suspect running from the house. During that pursuit, Officer Mangione noticed a vehicle speeding away with its headlights off and signaled Officer Miller to stop the car.[3]

Officer Miller pursued the vehicle, stopped it, and arrested Petitioner, who was the driver and sole occupant of the vehicle. According to Officer Miller, Petitioner was visibly nervous and explained his unusual operation of the motor vehicle by stating that he became concerned when he realized he was driving the wrong way on Rock Spring Road.[4] On the backseat of the vehicle, Officer Miller observed a large knife, screwdriver, and various household goods. These items were subsequently inventoried at the Bel Air Police Department and identified as stolen property taken from various locations in Harford County and elsewhere.

Corporal John Baker interviewed Petitioner on 2 August 1996, advised him of his *Miranda*[5] rights, and obtained his signature on an advice-of-rights form. It is not entirely clear from the record whether this interrogation was recorded. Corporal Baker conducted a second interrogation in the presence of Petitioner's then counsel,[6] on 14 August 1996, at the

---

**3.** Officer Mangione later determined that there had been a burglary at the residence.

**4.** Later, Petitioner attributed his attempt to operate the vehicle in an elusive manner to his fear that the police would discover that he had marijuana with him on that occasion.

**5.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**6.** The Court of Special Appeals noted that Petitioner retained new counsel, after the interrogations, to represent him at the pre-trial hearings and the bench trial in the instant case in Anne Arundel County. In fact, Petitioner was represented by attorneys from the Public Defender's Office for Anne Arundel County in this case. Pre-

Harford County Sheriff's Department. The second interrogation apparently was videotaped. Subsequently, Corporal Baker obtained warrants to search Petitioner's home, a bedroom in Petitioner's parents' home where he sometimes stayed, and his booth at Pilgrim's Variety, a flea market. The searches resulted in the seizure of hundreds of stolen items. Petitioner was ultimately charged in the instant case on 23 January 1998 by criminal information in the Circuit Court for Anne Arundel County with first-degree burglary and fourteen counts of theft over $300 as to those recovered items taken from Anne Arundel County victims.

Before trial, Petitioner's counsel requested discovery of a copy of the State's recording of Petitioner's statement. Petitioner's counsel reasoned that the recorded statement was vital for possible suppression purposes [7] and to prepare cross-examination of Corporal Baker should he testify, as expected.

sumably, Petitioner's counsel present at the 14 August 1996 interrogation in Harford County was not from the Anne Arundel County's Public Defender's Office as Petitioner had not been charged with any crimes in Anne Arundel County at the time of his interrogations.

7. No written, evidence-specific, pre-trial motion to suppress was filed in this case, although, apparently according to a local custom or practice, the document entering the appearance of Petitioner's counsel who ultimately represented him at the pre-trial hearings and trial, filed on 11 March 1998, included a very terse and generic incorporation by reference of, among other things, a form "Motion To Suppress Evidence ... on file with the Clerk of the Court and the Office of the State's Attorney...." The title of this document, "Appearance," gives no indication of the above included language. No copy of the referenced motion is included in the record. Moreover, it is apparent that such an omnibus motion to suppress could not have identified any specific documents or information that may have been sought to be suppressed in the present case.

The trial was scheduled to commence on 21 July 1998. Petitioner's counsel requested a postponement on the morning of 21 July, at which time the trial was rescheduled for 24 July 1998. Petitioner's counsel then proceeded to make a number of oral motions on 21 July, including one seeking compelled disclosure of Petitioner's recorded statement. Oral argument on that point continued on 24 July 1998. On 24 July 1998, after denial of Petitioner's motions, a bench trial commenced, continuing on 28 July, and, concluding on 4 August 1998.

The following courtroom exchange on 24 July 1998 captures the ebb-and-flow on this subject:

[DEFENDANT'S COUNSEL]: Well, Your Honor, there are motions on the table with respect to the warrants, but if I can address one other issue. I made several requests of the State for access to the videotape statements of my client.

The State had indicated that they were not planning to use my client's statements against him in the case in chief. However, there is still an issue as to whether or not the statements resulted in physical evidence being obtained.

I can't confidently suggest to my client whether we should waive that issue or litigate it, without having access to that videotape to see what my client said. I don't believe that I can confidently cross-examine any State's witness prior to having access to the videotape or the audiotapes in question.

Police reports from Harford County clearly indicate that the statement was in fact videotaped and/or audiotaped and it is my understanding that the Harford County Sheriff Department or the Bel Air Police Department has yet to deliver that tape to [the] State's Attorney.

THE COURT: If they are not using statements of your client in their case in chief, what right do you have to it at this point? I am missing your point.

[DEFENDANT'S COUNSEL]: I am under the impression, Your Honor, that they could also use his statements to possibly suppress any specific reference, any items I would like discovered as a result of the statements he made. Or if his statements won't be used to inculpate himself with respect to an admission or confession, those statements certainly did lead to the acquisition of physical evidence. Again, it is my impression, Your Honor, that I am entitled to seek suppression of that physical evidence through that manner.

THE COURT: What is the illegality? What is the basis for the illegality?

[DEFENDANT'S COUNSEL]: It would basically be a *Miranda* violation, Your Honor, and possibly a voluntary suspicion [sic].

THE COURT: State?

[THE STATE]: Your Honor, some of what was said I believe is accurate and some is inaccurate. There were statements made. At a certain point in time there was an interrogation done by the Bel Air Police in conjunction with the Harford County Sheriff's Department.

The Defendant did make several statements in reference to his participation in some things. I think it is inaccurate to say that certain statements would not be used as part of the State's evidence. I think several of the statements would not be relevant to the State's case and would not be used of course.

However, the sum and substance of what those statements were, have in fact been provided to [Petitioner's counsel]. There does—on Tuesday I said there appeared to be, I can now say with confidence that I have ascertained that there was a videotape done of this interrogation. A videotape we believe exists.

I have been in contact with the Harford County Sheriff's Office; they would have possession of it. They have individuals that are trying to find it. As recently as yesterday evening, I spoke with a Lieutenant Sandaman up there at Harford County who reasonably was confident that they could find it; they simply don't have it yet.

Certainly, in an ideal world we would have had that. It should be provided. I certainly agree that the Defense would be entitled to use it, or at least to inspect it if we were to use that particular piece of evidence. I think the significance here are the statements themselves. The sum and substance of the statements have been given to them. All the videotape is going to show is him saying it, as opposed to somebody else saying he said it.

THE COURT: All right. You answered my question. Thank you.

[THE STATE]: Okay.

THE COURT: Anything else, [Petitioner's counsel]?

[DEFENDANT'S COUNSEL]: Well, subsequent to that issue, Your Honor, again we -

THE COURT: Under the rules of discovery the State is required to give you the substance of any oral statements. The proffers have been given to you. I don't understand the purpose for the hearing.

[DEFENDANT'S COUNSEL]: The purpose of the hearing, Your Honor, would be that I have the substance of the statements. I believe the statements are possibly suppressible in themselves. As such, I believe this investigation may have gone any further. I am not aware of any independent investigation that was in effect at the time Mr. Johnson gave statements that might have led the State to any number of—might have led the State to discover his alleged complicity in any event.

For that reason, Your Honor, I believe that I am entitled to review those videotapes or that audiotapes [sic].

THE COURT: I don't understand what the issue is. I really don't. You have got the statements. You know what he said. If you are saying that somehow [ ] *Miranda* was violated, fine. We will have a hearing on that. If you are saying that he was coerced into giving a statement, fine. We will have a hearing on that. I want to know what your position is.

[DEFENDANT'S COUNSEL]: Based on what my client has told me, I dispute the accuracy of the substance of the statements that have been provided to me.

THE COURT: Well, that can be tested through cross-examination, the accuracy of the statements.

[DEFENDANT'S COUNSEL]: Again, I feel that I am handicapped by not having access to the tapes prior to the cross-examination. Again, I believe that—I understand what the Court is saying and I defer to the Court. But, for the record, I believe I should be entitled to access to the

videotape prior to such time that I get to cross-examine any officer that was involved in taking those statements.

THE COURT: Well, I don't think at this point of the trial—well, we haven't even started the trial yet, we are just still on motions. I don't understand any basis that you have proffered for any preliminary motion with regard to statements. So your request for a hearing on that is denied, based on what you have told me.

At the bench trial, before Corporal Baker was allowed to testify, Petitioner's counsel expressed his belief that the "State has agreed, has been asked not to use any of Mr. Johnson's statements in their case in chief, Your honor." The State responded:

Your Honor, we have touched on this several times and he keeps mentioning that and I indicated even earlier this morning that there was not an agreement that we would not use statements in this case in chief. I said that there were certain statements that he made that weren't relevant to this case and certainly would not be used on that basis.

I don't know where the belief that we would not use statements in the case in chief came from; each time he has reiterated that view, Your Honor, I have reiterated that that was not the case.

Petitioner's counsel retorted:

It is my understanding, Your Honor, that we did waive motions on the *Miranda* issue because I believe the State did tender to me the statements that they were not going to use of my client's. Inculpatory statements in their case in chief. It was with that understanding that I didn't pursue the *Miranda* issue at the motions hearing.

The following colloquy ensued between the trial judge and Petitioner's counsel:

THE COURT: As I recall it, as I recall that issue when it came up, I posed a question of whether or not you—well, not whether or not, but suggesting to you that you could cross-examine any witness concerning those statements. That is what I thought you were going to do. But, if they

say they want to use his statements, why can't they use his statements? What law dictates that they can't?

[DEFENDANT'S COUNSEL]: No, Your Honor. I suppose there is case law. I waived to get a—I permanently waived the *Miranda* issue at the motions hearing, based on the premise that they weren't going to use those statements—

THE COURT: This whole case is premised on misunderstandings. If you want to cross-examine the witnesses, you have every right to do it. I am going to overrule the objection.

Corporal John Baker was then permitted to explain his version of the interrogations. As to the first interrogation on 2 August, Corporal Baker testified as follows:

I conducted an interview with Mr. Johnson and asked him if he would state what had occurred that evening. He stated that he and his nephew had been sitting at the parking lot at Klein's, which is a superthrift, on North Main Street in Bel Air.

Then some juveniles on bicycles started harassing them. He said his nephew became agitated, exited the vehicle and started chasing these individuals on foot. Mr. Johnson stated he was driving around looking for his nephew when he observed the police in the area of Howard Street and Old Orchard Road and then fled the area with his lights out.

I asked him about the other things that had occurred during the time when he was being stopped and he stated that he was keeping his lights out so that he could retrieve some marijuana that he had hidden in his vehicle and tried to throw it out the window so he wouldn't be caught with it, but instead he stuffed it in the console.

He stated that he wanted to come clean with what he had done and to try and help the police, but only after he had talked with an attorney and then invoked his right. At that time all questioning ceased with Mr. Johnson.

Regarding the 14 August interrogation of Johnson, he testified, in pertinent part:

[THE STATE]: Who was present?

[CORPORAL BAKER]: There was myself, Detective Agnor, Farrell, Smith would be from the Harford County Sheriff's Department. Agnor and Farrell would be from the Newark, Delaware Police Department. There was Mr. Johnson and his [then] attorney, [ ].

[THE STATE]: Prior to the interview was Mr. Johnson read his *Miranda* rights?

[CORPORAL BAKER]: He was advised of his *Miranda* rights by [ ], his attorney. He was again issued a *Miranda* by police.

[THE STATE]: Did he affirmatively waive his *Miranda* rights to you?

[CORPORAL BAKER]: Yes, sir, he did.

[THE STATE]: How was that done?

[CORPORAL BAKER]: He conferred with his attorney and after conferring with his attorney he agreed to be interviewed by all officers that were there, involved in this, and to tell what he knew in reference to the burglaries and what his involvement was.

[THE STATE]: What, if anything, did Mr. Johnson state to you during that interview?

[CORPORAL BAKER]: At 1036 hours that morning he was interviewed by myself and Detective Smith of the Sheriff's Department at the Harford County Sheriff's Department. He stated that he mostly acted as a fence for his nephew, Robert Mark Rinkowitz.

He referred to him always as Mark. He stated that Mark would commit these burglaries, bring the property to him to sell. He stated that he would sell some of these items at a flea market in Aberdeen and some he would take to other types of sales or other places where items could be bought and sold.

Also he said that Mark had four people working for him. All he could think of were a couple of first names. He stated that in reference to what we arrested on, on the 2nd of August, 1996, he drove Mark around the neighborhood of

Old Orchard Road. He then parked on the parking lot of Klein's Superthrift.

Petitioner's defense at trial was that his nephew (Mr. Rinkowitz), who had stayed at Petitioner's parents' home and also worked at the Pilgrim's Variety flea market, was the guilty party. Marcus Johnson, Petitioner's father, testified that Rinkowitz maintained a separate booth at the flea market that was across the aisle from Petitioner's booth. During the execution of the warrant, officers took items from both booths. He also testified that Rinkowitz had been living in his home and storing goods in his basement, but at the time of the search he was staying elsewhere and stopped by two or three times per week. Petitioner's father stated that his son stayed at his parents' house "very seldom."

The trial judge found Petitioner guilty of fourteen counts of theft over $300. On 2 October 1998, the court imposed a sentence of fifteen years' imprisonment for the conviction of theft over $300 under count 2 of the charging document, to be served consecutive to a sentence imposed in the Circuit Court for Harford County, and concurrent sentences of fifteen years' imprisonment each for the remaining convictions, the latter suspended in favor of five years' probation upon release.

The Court of Special Appeals affirmed the judgment, holding that the trial court did not err when it denied defense counsel's request for a copy of Petitioner's recorded statement. The court explained that the defense was not entitled to a copy of the recording because the substance of the content of Petitioner's recorded statement had been provided, and furthermore, the State did not offer the actual recording as evidence at trial. The court reasoned that:

The substance of appellant's statements during the interviews was provided to appellant's counsel, pursuant to Rule 4–263(a)(2). Appellant nevertheless insists that the State intended to use his recorded statement at trial and, thus, he was entitled to view the videotape under Rule 4–263(b)(2). To the contrary, it is undisputed that the State did not intend to use the tape.... Moreover, the State did not use

the recorded statement at the trial. Rule 4–263(b)(2) is applicable only when "the State intends to use" a statement made by appellant. The statement was not used; consequently, Rule 4–263(b)(2) was not applicable.

## II.[8]

Petitioner contends that the trial court's ruling denying him the right to obtain his recorded statement violated Maryland Rule 4–263(b)(2)(A).[9] He argues that the Circuit Court should have required disclosure of the recorded statement because the State intended to use the content of the statement at trial through the testimony of Corporal Baker, one of his interrogators. He urges us to enforce the plain meaning of Maryland Rule 4–263(b)(2)(A) to require the State to furnish a copy of the recorded statement, not merely the substance of the content of the statement. Petitioner argues that, without the recorded statement, he was unable to determine whether the statement was lawfully obtained or to prepare for cross-examination and his defense.

The State argues that it provided the discoverable information required to be disclosed by the rule. It states:

---

**8.** Because the gravamen of Petitioner's appellate argument is, in part, that he was unable to make (or lulled into not making) an appropriate motion to suppress as to the statement based on the State's representation that it did not intend to use the statement at trial, we consider our analysis here to be directed at a discovery ruling, rather than a suppression matter. Accordingly, we are not limited in our consideration of the record below, as ordinarily would be the case were we considering a suppression ruling. *See Riddick v. State*, 319 Md. 180, 183, 571 A.2d 1239, 1240 (1990) ("When the question of the dishonor of a constitutional right arises by the denial of a motion to suppress, the relevant facts which we consider 'are limited to those produced at the suppression hearing' ") (citing *Simpler v. State*, 318 Md. 311, 312, 568 A.2d 22, 22 (1990)). *See also Trusty v. State*, 308 Md. 658, 670–71, 521 A.2d 749, 755 (1987).

**9.** Petitioner also argues that the Circuit Court should have required disclosure of the recorded statement under Maryland Rule 4–263(a)(2). We find it unnecessary to address that issue in light of our holding regarding Md. Rule 4–263(b)(2)(A).

The State complied with the [rule.] ... [ ] [Because] [ ] the State did not intend. to use the video-recorded statement, the State was not required to produce that recorded statement pursuant to Rule 4–263(b)(2)(A); and, [ ] by providing the substance of Johnson's oral statement obtained on August 14, 1996, the State complied with Rule 4–263(b)(2)(B).

Furthermore, the State asserts that the Court of Special Appeals was correct in its attempted distinction for discovery purposes between the videotaped statement as a physical item and the substance of the content of that statement, and then pointing out that only the latter was introduced in evidence through the testimony of Corporal Baker.

### A.

As to criminal cases, Maryland Rule 4–263(b)(2) provides, in pertinent part:

Rule 4–263.   Discovery in circuit court.

\* \* \* \* \*

(b) **Disclosure upon Request.**   Upon request of the defendant, the State's Attorney shall:

\* \* \* \* \*

(2) Statements of the defendant.   As to all statements made by the defendant to a State agent that the State intends to use at a hearing or trial, furnish to the defendant, but not file unless the court so orders: (A) a copy of each written or recorded statement, and (B) the substance of each oral statement and a copy of all reports of each oral statement;

With respect to the interpretation of the Maryland Rules, this Court has stated that, "[t]he canons and principles which we follow in construing statutes apply equally to an interpretation of our rules." *State v. Romulus,* 315 Md. 526, 533, 555 A.2d 494, 497 (1989).   In order to effectuate the purpose and objectives of the rule, we look to its plain text. *See Adamson v. Correctional Medical Serv., Inc.,* 359 Md. 238, 250–51, 753 A.2d 501, 507–08 (2000); *Huffman v. State,* 356

Md. 622, 628, 741 A.2d 1088, 1091 (1999). To prevent illogical or nonsensical interpretations of a rule, we analyze the rule in its entirety, rather than independently construing its subparts. *See Marsheck v. Board of Trustees of the Fire & Police Employees' Retirement System of the City of Baltimore,* 358 Md. 393, 403, 749 A.2d 774, 779 (2000). If the words of the rule are plain and unambiguous, our inquiry ordinarily ceases and we need not venture outside the text of the rule. *See Adamson,* 359 Md. at 250–51, 753 A.2d at 507–08; *Marsheck,* 358 Md. at 402–03, 749 A.2d at 779; *Huffman,* 356 Md. at 628, 741 A.2d at 1091.

The venerable plain meaning principle, central to our analysis, does not, however, mandate exclusion of other persuasive sources that lie outside the text of the rule. *See Adamson,* 359 Md. at 251–52, 753 A.2d at 508; *Marsheck,* 358 Md. at 403, 749 A.2d at 779. We have often noted that looking to relevant case law and appropriate secondary authority enables us to place the rule in question in the proper context. *See Adamson,* 359 Md. at 251–52, 753 A.2d at 508; *Marsheck,* 358 Md. at 403, 749 A.2d at 779.

Specific to the rule at issue here, we have noted that Maryland Rule 4–263 was derived from former Maryland Rule 741. *See State v. Brown,* 327 Md. 81, 90, 607 A.2d 923, 927 (1992). Thus, our case law interpreting the same language in former Rule 741(b)(2) as appears in Rule 4–263(b)(2) is instructive here. *See id.*

The scope of pretrial disclosure mandated by Maryland Rule 4–263 must be determined in light of the underlying policies of the rule. *See id. See also, Baynor v. State,* 355 Md. 726, 735–36, 736 A.2d 325, 330 (1999); *Hutchins v. State,* 339 Md. 466, 473, 663 A.2d 1281, 1285 (1995); *White v. State,* 300 Md. 719, 734, 481 A.2d 201, 208 (1984). We have explained that the rule serves dual purposes. In terms of fundamental fairness, broad discovery aids the defendant in preparing his or her defense and protects him or her from surprise at trial. *See Hutchins,* 339 Md. at 473, 663 A.2d at 1285. Maryland Rule 4–263 is also designed "to force the

defendant to file certain motions before trial, including a motion to suppress an unlawfully obtained statement." *White,* 300 Md. at 734, 481 A.2d at 208. As a predicate to the defendant's obligation to file a motion to suppress, the State must comply with the Rule's mandated pretrial disclosure of documents or items and information. In *Warrick v. State,* 302 Md. 162, 169, 486 A.2d 189, 193 (1985), we noted that "[t]he defendant cannot be expected to file such motions prior to trial unless he can obtain the necessary information to prepare for the suppression or exclusion hearing," (citing the Joint Committee of the Maryland Judicial Conference and of the Maryland State Bar Association, Report and Recommendations to Implement the American Bar Association's Standards for Criminal Justice at 26 (1974)).

### B.

■ A plain meaning reading of Maryland Rule 4–263(b)(2)(A) answers the threshold question in this case. There is no doubt that Petitioner's counsel made pre-trial requests to receive a copy of his client's recorded statement, in accordance with the Rule. The State did not provide the recorded statement, yet the alleged substance of the content of that statement was subsequently introduced by the State at trial, over objection, through Corporal Baker's testimony. The State attempts to rationalize its non-observance of the Rule by countering that it did not intend to use or play the actual recording *itself* at trial, but rather intended only that Corporal Baker testify as to his recollection of the content (or a summary) of what Petitioner said in the statement. The State claims that using the "statement" within the meaning of Maryland Rule 4–263(b)(2), thus triggering any obligation to provide the recording to a defendant before trial, means, in these circumstances, playing the tape at trial. This reasoning is meritless.

That the State used Petitioner's recorded statement against him through the testimony of Corporal Baker is beyond cavil. Moreover, as stated *supra,* Corporal Baker's testimony was clearly inculpatory. The State made it clear at the pretrial

motions hearing, and at trial before Corporal Baker testified, that it intended to use a version of the content of Petitioner's statement during its case in chief. Implementing that intent, the prosecutor asked Corporal Baker at trial what the Petitioner stated during the interrogations and Corporal Baker stated his recollection of what transpired. Necessarily, Corporal Baker's testimony was dependent on Petitioner's recorded statement.

■ The State shall not be allowed so disingenuously to circumvent the pre-trial disclosure mandated by Rule 4–263(b)(2)(A) by the device of using a derivative version of Petitioner's statement through Corporal Baker's testimony. We hold that, upon request of the defendant, the State must furnish a defendant's apparently available recorded statement made to a State agent, even if the State intends only to use the content of the recorded statement at trial, irrespective of whether the physical recording itself is intended for use as direct evidence at trial. For us to hold otherwise would render Rule 4–263(b)(2)(A) a nullity.

■ The State's argument that it provided the "substance" of Petitioner's oral statement, pursuant to Rule 4–263(b)(2)(B), does not relieve it of its companion obligation to produce the recorded statement under Rule 4–263(b)(2)(A).[10]

---

**10.** Respondent relies on our decision in *Baynor* to argue that providing the defense with the substance of Johnson's statement amounts to the necessary "simple but fair statement of relevant information" regarding the acquisition of the defendant's statement. *Baynor*, 355 Md. at 736, 736 A.2d at 330, *citing Warrick v. State*, 302 Md. 162, 171, 486 A.2d 189, 193 (1985). The State's reliance on *Baynor* is misplaced. The specific issue in *Baynor* stemmed from the petitioner's assertion that the State was required to provide a verbatim transcript of the questions posed to the petitioner and the answers he provided in an unrecorded statement, which included an exculpatory comment, made by the petitioner prior to the recording of his statement. *See Baynor*, 355 Md. at 737, 736 A.2d at 330–31. We were satisfied, based on the specific facts in *Baynor*, that the information the petitioner requested was not relevant to the statement the State intended to use at trial, within the meaning of Maryland Rule 4–263(a)(2)(B). Our decision in *Baynor* was resolved by integrating the issues of the relevance of the statement at issue with whether the State actually intended to use the statement.

Maryland Rule 4–263(b)(2) cannot be parsed as the State wishes. To allow the State to satisfy its discovery obligations under Rule 4–263(b)(2)(B), in lieu of Rule 4–263(b)(2)(A), would grant the State largely unchecked discretion to summarize, edit, or characterize the content of a defendant's recorded statement in any form it chooses. This violates the spirit and letter of discovery of a recorded statement as provided by the rule. When a recorded statement is available, the "substance" of the oral delivery of the statement, as determined by the State, may not substitute for, or even be able to describe, the nuances, qualities, or manner in which the interrogation was conducted. A principal purpose of the rule is to provide "for the discovery of statements which might possibly have been unlawfully obtained." *Brown,* 327 Md. at 92, 607 A.2d at 928. Mere production of the "substance" of a defendant's recorded statement risks thwarting defense counsel's ability to determine the lawfulness of the interrogation or the evidence that stems from it.[11]

We have previously issued a warning regarding the potential consequences of failing to disclose a defendant's statement:

> [T]he State should err on the side of disclosure in any case where there reasonably exists the possibility that the statement was unlawfully obtained. This word of caution is issued because if the statement was discoverable and wasn't provided, the trial court may, within its discretion, impose a

---

Incidentally, in *Baynor,* we held that under Maryland Rule 4–263(a)(2), the State was not required to disclose the entire interrogation of the defendant when some questions were asked before the tape recorder was turned on. *Baynor,* 355 Md. at 738–40, 736 A.2d at 331–2. In *Baynor,* the State *did* provide the petitioner with his recorded statement which it intended to use a trial. Contrary to the facts in *Baynor,* the State in the present case did not furnish the actual, existing recorded statement.

11. We note again that Petitioner's trial counsel was not present when the statement was recorded. Although Petitioner's prior attorney (whose appearance was not entered in this case) apparently was present for the 14 August 1996 interrogation, even he was not there when the 2 August statement was given.

sanction for the discovery violation under 4–263(i). Subsection (i) authorizes the trial judge to order the violating party "to permit the discovery of the matters not previously disclosed, strike the testimony to which the undisclosed matter relates, grant a reasonable continuance, prohibit the party from introducing in evidence the matter not disclosed, grant a mistrial, or enter any other order appropriate under the circumstances." Thus, the State should consider the possible repercussions of failing to disclose a statement that the defendant had reasonable grounds to argue was subject to a pretrial suppression motion.

*Brown,* 327 Md. at 95, 607 A.2d at 930. This warning is even more applicable when a recorded statement, given to a State agent, appears available.

## C.

We evaluate whether the State's failure to produce the recorded statement was harmless error under the following standard:

[W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict. (Footnote omitted).

*Hutchins,* 339 Md. at 475–76, 663 A.2d at 1286 (citing *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976)).

We have no difficulty concluding that Petitioner was prejudiced by the State's failure to produce the recorded statement prior to Corporal Baker's testimony. "Common sense and judicial experience teach that a defendant's prior statement in the possession of the government may be the single most crucial factor in the defendant's preparation for

trial." *United States v. Percevault,* 490 F.2d 126, 129–30 (2d Cir.1974). The wisdom of this observation is proven true again in the present case.

Without providing Petitioner with the recorded statement, the dual purposes of Rule 4–263 could not be fulfilled here. As Petitioner's trial counsel explained to the trial court, without the recorded statement, Petitioner was unable to prepare for his defense, i.e., to effectively cross-examine or impeach the State's witness or to protect himself from surprise. *See Hutchins,* 339 Md. at 473, 663 A.2d at 1285. We noted in *Carr v. State,* 284 Md. 455, 460–61, 397 A.2d 606, 608–09 (1979):

> Every experienced trial judge and trial lawyer knows the value for impeaching purposes of statements of the witness recording the events before time dulls treacherous memory. Flat contradiction between the witness'[s] testimony and the version of the events given in his reports is not the only test of inconsistency. The omission from the reports of facts related at the trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness'[s] trial testimony.

(citing *Jencks v. United States,* 353 U.S. 657, 667, 77 S.Ct. 1007, 1013, 1 L.Ed.2d 1103, 1111 (1957)). Although the issues and facts in *Carr* are different from this case, we think the observations in *Carr* as to the value of an available recorded statement to a defense counsel are worth noting here. The determination of what material contained on the recording is useful to the defense is best left to defense counsel and his or her client. *See Leonard v. State,* 46 Md.App. 631, 638–39, 421 A.2d 85, 89 (1980).

Furthermore, Petitioner's trial counsel was unable to determine if an issue existed as to whether his client's statement was obtained unlawfully. The effect was that he could not maintain an evidence-specific motion to suppress without viewing the recorded statement. *See Warrick,* 302 Md. at 169, 486 A.2d at 192–93. In *Brown,* we explained that the State's fulfillment of Maryland Rule 4–263 necessarily triggers the

defense's obligation to seek suppression of evidence unlawfully obtained. We opined:

> Admissions, statements, or confessions that might have been unlawfully obtained are subject to a pretrial motion to suppress under [Maryland] Rule 4–252(a)(4). Under Rule 4–252 an allegation that an admission, statement, or confession was unlawfully obtained must be raised by pretrial motion or it is waived. In limiting by rule required State disclosure to statements made to State agents, and in excluding by decision statements made to State agents during the commission of the crime, this Court has, as have the federal courts, made it clear that oral statements which must be disclosed under 4–263 are those statements which might possibly have been unlawfully obtained and suppressible under 4–252.

*Brown,* 327 Md. at 94, 607 A.2d at 929.

This Court is not satisfied, beyond a reasonable doubt, that the failure to furnish the recorded statement did not contribute to the rendition of a guilty verdict in the present case. We have no way of knowing, based on the record, what weight the trial judge gave to Corporal Baker's testimony as to the content of the recorded statement. Although we imagine the significance of that testimony could be considerable, the trial judge's articulated findings do not specify what weight he gave it.[12]

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT**

---

**12.** The trial judge explained his judgment as follows:

> ... I am satisfied, after listening to the argument of the Assistant State's Attorney and reviewing all of the evidence that you were the thief in each and every one of these cases. I am satisfied through the stipulations and through the evidence that the amount taken was in excess of $300.
>
> Therefore, it is my judgment and verdict that you are guilty as to counts two through fifteen for the theft of this property having a value in excess of $300. There is an abundance of evidence here to support it and the reasonable inferences to be drawn from the evidence convinces me of your guilt.

OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.