585 A.2d 833

STATE of Maryland

v.

James COOK, Walter Worley a/k/a Troy Keith a/k/a "Butch," Ronald Wilson a/k/a Robert Lee Taylor, Jr.

No. 83, Sept. Term, 1990.

Court of Appeals of Maryland.

Feb. 22, 1991.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for petitioner.

José Felipé Anderson, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for respondent.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ., CHARLES E. ORTH, Jr. and MARVIN H. SMITH, Judges of the Court of Appeals (retired), Specially Assigned, and RAYMOND G. THIEME, Jr., Judge of the Fifth Judicial Circuit, Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

## I

Maryland Code (1957, 1987 Repl.Vol.), Article 27, § 591 provides:

(a) The date for trial of a criminal matter in a circuit court:

(1) Shall be set within 30 days after the earlier of:

(i) The appearance of counsel;  or

(ii) The first appearance of the defendant before the circuit court, as provided in the Maryland Rules;  and

(2) May not be later than 180 days after the earlier of those events.

(b) On motion of a party or on the court's initiative and for good cause shown, a county administrative judge or a designee of that judge may grant a change of the circuit court trial date.

(c) The Court of Appeals may adopt additional rules of practice and procedure for the implementation of this section in circuit courts.

The Court of Appeals responded to the invitation to adopt rules to implement the section. Now designated as Maryland Rule 4–271 (formerly Rule 746 and originally Rule 740), it prescribes in relevant part:

(a) **Trial Date in Circuit Court.**—(1) The date for trial in the circuit court shall be set within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court pursuant to Rule 4–213, and shall be not later than 180 days after the earlier of those events. When a case has been transferred from the District Court because of a demand for jury trial, and an appearance of counsel entered in the District Court was automatically entered in the circuit court pursuant to Rule 4–214(a), the date of the appearance of counsel for purposes of this Rule is the date the case was docketed in the circuit court. On motion of a party, or on the court's initiative, and for good cause shown, the county administrative judge or that judge's designee may grant a change of a circuit court trial date.[1]

We have addressed the statute and rule in over a dozen opinions, starting with *State v. Hicks,* 285 Md. 310, 403 A.2d 356, *on motion for reconsideration,* 285 Md. 334, 403 A.2d 368 (1979). We fleshed out, from time to time, the provisions of the statute through the principles of statutory

---

1. *State v. Hicks,* 285 Md. 310, 403 A.2d 356, *on motion for reconsideration,* 285 Md. 334, 403 A.2d 368 (1979), served as an eponym for the statute and the rule. The dictates of the rule and the statute which it implemented are generally known as the *Hicks Rule.* When the phrase is used in this opinion, it encompasses both the statute and the rule unless otherwise indicated.

interpretation and applied the rule implementing the statute, as construed, to a variety of factual circumstances.

We summarize the highlights of our opinions. We determined § 591 to be

> "plainly a declaration of legislative policy designed to obtain prompt disposition of criminal charges; its enactment manifested the legislature's recognition of the detrimental effects to our criminal justice system which result from excessive delay in scheduling criminal cases for trial and in postponing scheduled trials for inadequate reasons."

*Goins v. State,* 293 Md. 97, 108, 442 A.2d 550 (1982), quoting *Hicks* 285 Md. at 316, 403 A.2d 356. We declared that the statute and rule were not meant to supersede the constitutional rights to a speedy trial; they "were not intended to be mere codifications of constitutional speedy trial analysis." *Goins,* 293 Md. at 109, 442 A.2d 550. We warned that, although " 'Rule 746 [ (now Rule 4–271) ] stands on a different legal footing than the Sixth Amendment's constitutional right to a speedy trial, we intend no departure from the established law' concerning the State's 'Sixth Amendment obligation' to bring the defendant to a speedy trial." *Id.* at 110, 442 A.2d 550, quoting *Hicks* 285 Md. at 320, 403 A.2d 356. We emphasized that "[t]he purpose of the rule is to promote the expeditious disposition of criminal cases," *Rosenbach v. State,* 314 Md. 473, 479, 551 A.2d 460 (1989), that is "to operate as a prophylactic measure 'to further society's interest in the prompt disposition of criminal trials,' " *Curley v. State,* 299 Md. 449, 460, 474 A.2d 502 (1984), quoting from *State v. Frazier,* 298 Md. 422, 456, 470 A.2d 1269 (1984). *See State v. Brown,* 307 Md. 651, 657, 516 A.2d 965 (1986). In short, the adoption of the rule "was intended to 'put teeth' into the statutory requirements governing the assignment of criminal cases for trial." *Frazier* 298 Md. at 427, 470 A.2d 1269, quoting *Hicks* 285 Md. at 318, 403 A.2d 356.

In our opinion on the motion for reconsideration in *Hicks,* we resolved once and for all any doubt that the trial date

requirement of Rule 4–271 is mandatory and that dismissal is ordinarily the appropriate sanction for violation of that requirement. 285 Md. at 334–335, 403 A.2d 356. We made clear, however, that while the 30–day provision with respect to setting the trial date was mandatory for those involved in setting the trial date, dismissal is not the appropriate sanction for violation of the 30–day provision. *Id.* at 335, 403 A.2d 356. Nor is dismissal of the criminal charges appropriate "where the defendant, either individually or by his attorney, seeks or expressly consents to a trial date in violation of [the rule]." *Id.*

As we have seen, § 591 and Rule 4–271 each temper somewhat the 180–day requirement. The statute provides in subsection (b):

On motion of a party or on the court's initiative and for good cause shown, a county administrative judge or a designee of that judge may grant a change of the circuit court trial date.

Except for the substitution of two words of no substantive significance, the rule tracks the language of the statute regarding the change in the trial date. *See Frazier,* 298 Md. at 427–428, 470 A.2d 1269. We pointed out in *Frazier* that "a postponement of the trial date *must* be made or approved by the administrative judge or a judge designated by him and only for good cause shown." *Id.* at 426, 470 A.2d 1269 (emphasis added). And we noted that "[t]he critical order ... is the order having the effect of extending the trial date beyond 180 days." *Id.* at 428, 470 A.2d 1269. *See Goins,* 293 Md. at 99, 106–110, 442 A.2d 550.

In *Rosenbach,* we reviewed our teachings with respect to the postponement of a trial date. We noted that nothing in § 591 or Rule 4–271(a) requires that the administrative judge specifically be conscious of the statute and rule. As long as the county administrative judge extends or approves the extension of the trial date, and the order is supported by good cause, the requirements and purpose of § 591 and Rule 4–271(a) have been fulfilled. Nor is it essential, under the statute and rule, that the postponing

judge, at the time of the postponement or thereafter, personally reset or cause the case to be reset for a particular date. The only prerequisite is that the administrative judge or that judge's designee find good cause. Once that determination is made, the postponement is valid for purposes of the rule, subject only to the deferential review accorded the judge's good cause finding. Once that occurs, the question is no longer whether there was a postponement for good cause. 314 Md. at 478–479, 551 A.2d 460. This apercu in *Rosenbach* of our opinions cited *Goins* 293 Md. at 111–112, 442 A.2d 550, *Carey v. State,* 299 Md. 17, 472 A.2d 444 (1984), and *Frazier* 298 Md. at 426, 454, 470 A.2d 1269. "In any event," we held in *Rosenbach* 314 Md. at 480, 551 A.2d 460,

> the statute and rule do not require the administrative judge or that judge's designee to make a specific finding that a postponement will take the case beyond the 180-day limit, or to postpone a case to some specific future date.[2]

Once the postponement is deemed to be valid for the purpose of the rule (the defendant has the "burden of demonstrating either a clear abuse of discretion or a lack of good cause as a matter of law," *Rosenbach,* 314 Md. at 479, 551 A.2d 460, quoting *Frazier* 298 Md. at 454, 470 A.2d 1269), the issue becomes the length of the delay.

A case postponed for good cause may yet run afoul of the statute and rule if, after a valid postponement, there is

---

2. We noted in *Rosenbach v. State,* 314 Md. 473, 480, 551 A.2d 460 (1989), that it may be desirable, but not always feasible, for the administrative judge or his designee to postpone a case to some specific date. We further observed:

> Other steps to assure prompt determination of a new trial date may also be desirable. For example, at the time of postponement, counsel may be directed to go forthwith to the appropriate assignment office and obtain then and there a new trial date. But none of these approaches is mandated by the statute or rule. It is enough that the postponement be made by the administrative judge or designee, that it be for good cause, and that there be no inordinate delay between the postponement and the eventual trial.

*Id.* (citations omitted).

inordinate delay in bringing the case to trial.... The purpose of the rule is to promote the expeditious disposition of criminal cases, ... and this purpose is not served if, after a good cause postponement, nothing further is done to achieve that goal. Thus, the dismissal sanction may once again be invoked if, after a good cause postponement, trial is not begun with reasonable promptness.... But the burden of showing that the post-postponement delay is inordinate, in view of all the circumstances, is on the defendant.

*Rosenbach* 314 Md. at 479, 551 A.2d 460 (citations omitted). We explained:

The policy of the rule, of course, demands that both the court and prosecution take appropriate steps to assure that there is no inordinate delay.... It is for this reason that a case must be dismissed if inordinate delay is found. But this does not mean that a postponing judge must take an active part in the rescheduling of cases. It does mean that the official who undertakes to reset the case (administrative judge, designee, or CAO [Central Assignment Office, when the judge delegates the assignment of a new trial date to it]) must make certain that the commencement of the trial is not inordinately delayed.

*Id.* at 480, 551 A.2d 460. We found it to be clear, then, that the question of good cause for postponement and the question of subsequent inordinate delay are separate issues. When CAO sets a new trial date beyond the 180–day limit, the inordinate delay issue may be implicated, but that action has no bearing on the question of whether good cause existed in the original grant of the postponement.

*Id.* "The critical postponement under the statute and rule," we pointed out, "is the one which, in fact, carries the case beyond the 180–day limit. Whether the delay from postponement to trial is inordinate is a question separate from whether the postponement was for good cause." *Id.* at 481, 551 A.2d 460.

We have had occasion to answer other questions surfacing in the turbulent wake left by *Hicks*. In *Farinholt v. State*, 299 Md. 32, 40, 472 A.2d 452 (1984), we held that the dismissal sanction has no relevance when a case has already been postponed beyond the 180–day period and the postponement was

    1) in accordance with the statute and the rule; OR

    2) upon the defendant's motion; OR

    3) with the defendant's express consent;

unless the defendant's constitutional speedy trial right was denied.

*See State v. Brookins*, 299 Md. 59, 62, 472 A.2d 465 (1984).

In *State v. Harris*, 299 Md. 63, 472 A.2d 467 (1984), a postponement beyond 180 days was properly ordered, but there was a delay thereafter of over three months in bringing the case to trial. We said the test was

> whether the defendant has met the burden of establishing that the administrative judge's decision to postpone the trial date, and the length of delay until the new trial date, represent a clear abuse of discretion.

*Id.* at 67, 472 A.2d 467. We found that the defendant did not meet this burden. We observed:

> Although the length of the delay from November 23rd to March 8th may be substantial, it is explained by the extensive proceedings and opinion on the suppression matter.

*Id.* "Consequently," we held, "the motion to dismiss was properly denied by the trial court." *Id.*

In *State v. Bonev*, 299 Md. 79, 472 A.2d 476 (1984), 13 February 1982 marked the expiration of the 180–day period. A trial date within the period, 16 November 1981, was assigned. The opinion recounts what then transpired:

> The case could not be reached on [the trial date assigned], however because of the unavailability of a court, and the designated administrative judge signed an order on November 16th postponing the trial date. The order recited that the postponement was necessary "due to an excess

buildup of cases awaiting trial with no courtroom available [and] [t]here are currently 14 cases already pending on the list to be moved to the first available court." A new trial date of February 25, 1982, was selected by the Assignment Office. The February 25th date was postponed, however, because defendant's counsel was trying another case on that day. The case was placed on the "move list," and a court was available for trial on March 1, 1982.

*Id.* at 81, 472 A.2d 476 (footnote omitted). When the case was called for trial, defense counsel moved to dismiss on the ground that the *Hicks Rule* had been violated. The trial court granted the motion, and a majority of the panel of the Court of Special Appeals affirmed on direct appeal. On certiorari, we concluded, "The record in this case does not permit a conclusion that the postponement of the trial date from November 16, 1981, to February 24, 1982, represented a clear abuse of discretion." *Id.* The effect of our mandate was that the case be tried. *Id.* 299 Md. at 82, 472 A.2d 476. *See Frazier,* 298 Md. at 461, 470 A.2d 1269, in which we held, as stated in *Harris,* 299 Md. at 67, 472 A.2d 467, that

the unavailability of a court does not, as a matter of law, constitute a lack of good cause for postponement.

In *Carey v. State,* 299 Md. 17, 472 A.2d 444 (1984), the administrative judge, within the 180–day period for trial, ordered that a mental examination be performed on the defendant. When the Assignment Commissioner was informed that the examination had been completed, he set a trial date which was 24 days beyond the prescribed 180–day period. The defendant moved to dismiss for violation of the *Hicks Rule.* The trial court denied the motion. Carey went to trial, was convicted, and the judgment entered was affirmed by the Court of Special Appeals. We held that the administrative judge's order for a mental examination of the defendant constituted an order postponing the trial as required by the *Hicks Rule. Id.* 299 Md. at 21–22, 472 A.2d 444. The trial judge's subsequent order, reiterating to

clerical personnel that a new trial date would have to be assigned because of the order for a mental examination, was not the order which effectively postponed the trial and, thus, did not have to be entered by an administrative judge. *Id.* We stated that "[t]he defendant introduced nothing which would have permitted the trial court to conclude that this was a clear abuse of discretion by the assignment personnel acting under the supervision of the administrative judge." *Id.* at 23, 472 A.2d 444. And we found that "[t]he time period [of 24 days] was not so inordinately long as to create a prima facie case of undue delay." *Id.* We affirmed the judgment.

We remanded *Mahammitt v. State*, 299 Md. 82, 472 A.2d 477 (1984), without affirmance or reversal for further proceedings. We explained:

> The record in this case clearly shows that the defendant was tried beyond the 180–day deadline prescribed by § 591 and Rule 746. The record, however, establishes little else bearing upon the § 591 and Rule 746 question. Under the circumstances, and in the interests of justice, we believe that it is appropriate to invoke Rule 871 and order that the case be remanded to the trial court for further proceedings. After receiving whatever pertinent evidence is offered by the parties regarding the issue, the trial court should determine whether there was a violation of § 591 and Rule 746 which requires the sanction of dismissal. If the court concludes that there was such violation, the charges must be dismissed. If the court concludes to the contrary, the prior judgments of conviction should remain intact.

*Id.* at 86, 472 A.2d 477.

In *Capers v. State*, 317 Md. 513, 520, 565 A.2d 331 (1989), we proclaimed:

> Because of the important policy embodied in the statute and rule, the 180–day deadline which they establish may be extended only in strict compliance with their provisions. "Thus, *every* postponement must be granted by the county administrative judge or his designee and must

be supported by good cause." *Brown,* 307 Md. at 657, 516 A.2d at 968 [emphasis in original]. The intervention of the administrative judge or that judge's designee is critical because

'it is the administrative judge who has an overall view of the court's business, who is responsible "for the administration of the court," who assigns trial judges, who "supervise[s] the assignment of actions for trial," who supervises the court personnel involved in the assignment of cases, and who receives reports from such personnel.' and '[c]onsequently, the administrative judge is ordinarily in a much better position than another judge of the trial court, or an appellate court, to make the judgment as to whether good cause for postponement of a criminal case exists.'

*State v. Toney,* 315 Md. 122, 129–130, 553 A.2d 696, 700 (1989) (quoting *State v. Frazier,* 298 Md. 422, 453–454, 470 A.2d 1269, 1285 (1984)).

In *Capers*

the postponement that carried Capers's case beyond the 180–day period was not granted by the county administrative judge or by that judge's designee. It was granted by the assignment officer.

*Id.* We held:

The statute and rule do not contemplate or permit the exercise of postponement authority by anyone other than one with the authority of an administrative judge. The violation before us here mandates dismissal of the charges against Capers.

*Id.* at 520–521, 565 A.2d 331 (footnote omitted). *Capers* spotlights anew our view of the rules of procedure. We expressed it again in *Goins,* 293 Md. at 109, 442 A.2d 550, with respect to the *Hicks Rule:*

As we have stated repeatedly, rules of procedure setting forth requirements in mandatory terms " 'are not guides to the practice of law but precise rubrics "established to promote the orderly and efficient administration of justice

and ... are to be read and followed." ' " *State v. Ricketts*, 290 Md. 287, 292, 429 A.2d 1025 (1981), quoting from *Countess v. State*, 286 Md. 444, 463, 408 A.2d 1302 (1979), as well as cases there cited.

The case we are called upon to decide on this appeal concerns the *Hicks Rule*.

## II

▆ James Cook, Walter Worley, a/k/a Troy Keith, a/k/a "Butch,"[3] and Ronald Wilson, a/k/a Robert Lee Taylor, Jr., were charged by way of criminal informations filed by the State's Attorney for Baltimore City with numerous violations of the controlled dangerous substances laws of Maryland. A judge presiding in the Circuit Court for Baltimore City dismissed the charges for violation of the *Hicks Rule*. The judgment was affirmed on the State's appeal to the Court of Special Appeals. *State v. Cook*, 82 Md.App. 663, 573 A.2d 77 (1990). We granted the State's petition for the issuance of a writ of certiorari. One question is presented:

> Where, twelve days before the expiration of the 180–day period specified in Article 27, Section 591 and Maryland Rule 4–271(a), the administrative judge's designee found good cause and placed the Respondents' cases on the move list, and the cases eventually came on for trial twenty-three days after the 180–day period expired, was there compliance with the statute and the rule?

The date of the action of the administrative judge's designee was 7 July 1989. This was twelve days before the expiration of the 180–day deadline. The Court of Special Appeals correctly found that this was the critical date. "We are not concerned, therefore," it said, "with any of the postponements that occurred before 7 July 1989, since they played no part in taking the case beyond the 180–day limit."

---

**3.** The criminal informations gave the third alias for Worley as "Dutch." In the transcript of the proceedings in the Circuit Court for Baltimore City, the third alias is stated to be "Butch," and that is the name shown thereafter in the record.

*Cook,* 82 Md.App. at 667, 573 A.2d 77. The intermediate appellate court was also correct in its observation:

> The issue before us on this appeal boils down to a single, simple question: Did [the judge's] order of 7 July 1989, putting the case on the move list twelve days shy of the expiration of the 180–day limit, constitute a postponement or change of trial date that caused the trial date to be extended beyond the 180–day limit?

*Id.* The State argued that it was a good cause postponement or change of trial date; the accused contended that it was not. The trial judge had ruled in favor of the accused, and the Court of Special Appeals agreed with her ruling. *Id.* The trial judge was wrong, and, thus, the intermediate appellate court erred in agreeing with the trial judge.

When the cases were brought before the postponing judge, he concluded, "The court will enter a finding of good cause and place the cases on the move list." The judge executed his conclusion by completing a "Postponement Form" for each case. The form contained the words "GOOD CAUSE SHOWN FOR POSTPONEMENT," preceded by a space for the initials of the postponing judge. The space on each form with respect to the cases here were initialled by the designated judge. But on each of the forms except one, the word "POSTPONEMENT" was crossed out and "ML" written in lieu thereof. "ML" referred to the "move list."[4] In reaching his decision, the judge remarked:

> Counsel, stay very close at hand, and stay in contact with [the Assignment Office of the court]. Cases are going to trial as soon as the first court is available. The court will enter finding of good cause and place the cases on the move list.

On 10 August 1989, twenty-three days after the 180–day period expired, the cases were taken off the move list and assigned to the court which dismissed the charges. By

---

4. An explanation of the "move list" is set out in *State v. Frazier,* 298 Md. 422, 431–435, 470 A.2d 1269 (1984).

coincidence, the presiding judge in this court was the same judge who, unable to reach the cases on the 6 July 1989 trial date because of a trial in progress, had ordered that they be referred to the administrative judge the next day. The reason for the 23–day delay from 7 July to 10 August is not explicitly reflected in the record before us.

The trial judge was troubled by the delay but was "indeed very, very hesitant to project into the Hicks area again." She commented that since *Hicks*

the Appellate Courts have found a reason every time to not invoke the *Hicks Rule* and I don't believe they have used the speedy trial rule or constitutional rule has been found applicable either. So that any time a Judge dares to say that *Hicks* was violated, one is looking into the face of a Court which the Courts, the Appellate Courts, which were very peremptory when they talked about bringing people to trial within the 120 days and then when the time was increased to 180 said 180 didn't mean what it appeared to mean under any number of combinations and circumstances.

The judge noted that the circuit court in Baltimore City had an overwhelming docket and that "the administrative powers to be ... have not made much of a provision or any whatever at all for giving priority to cases simply because of their Hicks problems." She pointed out that during the lapse of time here, her court had been "dark a number of times.... nothing was done to [assign this case to her court] or any other court ... until last Friday when it came in off the move list." She thought that "the big problem obviously is that there is no facility to take a case and say this case must go, docket cases notwithstanding." She believed, however, that the *Hicks Rule* was violated in these cases, although she "would welcome the [appellate courts'] views on this matter." Although she was "tempted to say let's go to trial and see whether I'm right or wrong," she concluded:

I cannot in good conscience after examining the law and the facts in this case in which all of the Defendants

consistently refused to waive and which all but one of the Defendants has spent the last ten months in jail awaiting trial and in which I know they meant to have a trial because there have been strenuous efforts to bargain this case, all of which have been unsuccessful despite the risk that these Defendants are running of sentences far higher than they could have obtained by going to trial by pleading guilty—

I cannot in good conscience deny their motion and I'm granting it.

██ The Court of Special Appeals was correct in its view that

[i]f there is a postponement by the county administrative judge or designee, for good cause, that results in the case being set for trial beyond the 180–day limit, the statute and the rule are not violated; if there is no postponement meeting those criteria, setting a trial date beyond the 180–day limit constitutes a violation of the statute and rule, for which dismissal is the appropriate remedy.

*Cook,* 82 Md.App. at 667, 573 A.2d 77. The Court of Special Appeals went astray, however, in its interpretation of the action of the postponing judge. It proceeded to decision on the view that the postponement on 7 July 1989 was not for good cause. The intermediate appellate court found

that placing a case on the move list is not intended to be a postponement or change of date, but the equivalent of continuing the case in a "ready to try" status on a day-to-day basis. In the case *sub judice,* when it became apparent that keeping the case on the move list would not result in a trial within the 180–day limit (because one of the defense attorneys was engaged in another, lengthy trial), the State's Attorney should have referred the matter back to the administrative judge for a "good cause" postponement that would take the case beyond 180 days without violating the statute and rule.

*Id.* at 668, 573 A.2d 77. It summarized:

The case was originally set for trial well within 180 days from the first appearance in court of the defendants.

That was in compliance with the statute and the rule. The postponements that resulted in eventually setting the trial for 6 July 1989 (the 167th day) did no violence to the rule. But when, without postponing the case again for good cause, the court permitted it to languish on the move list beyond the 180th day, the statute and the rule were violated, and dismissal of the charges against appellees was the proper sanction for that violation.

*Id.* at 668–669, 573 A.2d 77.

We do not agree. The decisive part of the postponing judge's action on 7 July 1989 was not the placing of the cases on the move list, but his finding that there was good cause for delay. Whether he placed the cases on the move list as a prod for a prompt trial thereafter, or whether he simply left future action to bring the cases to trial to the assignment clerk was of no matter. It is pellucid from the postponing judge's comments and on the face of the form he completed that he found good cause to delay the trial of the cases. It was of no consequence that the judge did not label his action a "postponement." The effect was that the trial of the cases was "postponed" for good cause. As we have seen, he had no need to set a new trial date or to be specifically concerned with the *Hicks Rule* or with the proximity of the cases to the 180–day deadline. The record does not establish that the finding of good cause was an abuse of discretion or erroneous as a matter of law. Therefore, the finding of good cause for delay took the cases out of the ambit of the *Hicks Rule,* subject to a showing by the defendants that the lapse of time between the good cause finding and the date the cases were called to trial was inordinate.

■ The trial judge conducted a plenary hearing on the motions to dismiss. Pat Henry, an employee of the Assignment Office, supervising the movement of cases in the Circuit Court for Baltimore City, testified. As we read her testimony, it is not clear precisely why the cases were not assigned for trial before 10 August 1989. In any event, in the light of our prior opinions, *see supra,* on the matter, we

do not believe that the delay here was inordinate. We are aware, of course, as we were in our prior opinions, of the overwhelming caseload in the Circuit Court for Baltimore City. For example, in civil jury cases, the time to trial has slipped from 13 months to two years since 1988, in an attempt to obtain a more prompt trial of criminal causes. *See* Russell Committee of the Bar Association of Baltimore City, The Drug Crises and Underfunding of the Justice System in Baltimore City (1990) (The Russell Report) at 3. Despite this, "Baltimore City's backlog of criminal cases has increased from 1,400 to 2,300 in the past year." *Id.* "To exacerbate this overwhelming situation, there are limited resources to deal with these problems. In fact, the facts about the underfunding of the criminal justice system are equally staggering." *Id.* "The Circuit Court for Baltimore City needs 7 additional judges according to the Circuit Court Administrative Judge. But the one additional judge approved by the State last year, received no funding from the City for necessary support staff." *Id.* The plain indication is that the cases here were not more promptly tried for the same reason they were not tried on the previous dates in which trial was set, namely there was no courtroom or judge available to try them. As we have seen, the unavailability of a court does not, as a matter of law, constitute a lack of good cause for postponement. In any event, in the light of the factual situation spelled out in the Russell Report and our previous opinions on the matter, we do not believe that a delay of twenty-three days can reasonably be said to be inordinate.

We hold that there was no violation of the *Hicks Rule* in the circumstances here, and there being no claim of the denial of a constitutional right to a speedy trial, dismissal of the charges was not an appropriate sanction. Therefore, the dismissal of the charges by the trial judge was a clear abuse of discretion. The answer to the question presented to us is "Yes."

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED;

CASE REMANDED TO THAT COURT FOR REMAND TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH DIRECTION TO VACATE THE ORDER GRANTING THE MOTIONS TO DISMISS THE CHARGES AND TO PROCEED TO TRIAL;

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENTS.

RODOWSKY, J., joins in Part II only of the opinion and concurs in the mandate.