771 A.2d 1082

**James Delario WILLIAMS**

**v.**

**STATE of Maryland.**

**No. 95, Sept. Term, 2000.**

Court of Appeals of Maryland.

May 10, 2001.

Arthur A. Delano, Jr., Asst. Public Defender (Stephen E. Harris, Public defender, on brief), Baltimore, for petitioner.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of MD, on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

BATTAGLIA, Judge.

█ We issued a writ of certiorari in this case to decide whether the State violated Maryland Rule 4–263(a)(2)(C) by inaccurately representing in discovery that a police officer witness, who was the non-arresting surveilling officer, could not specifically identify the defendant, when at trial the officer positively identified the defendant. We conclude that the police officer's surveillance observation, if used by the State for purposes of identification, is a pre-trial identification requiring disclosure under Maryland Rule 4–263(a)(2)(C). By failing to accurately portray the police officer's pre-trial identification of the defendant, the State violated this rule and such violation unduly prejudiced the defense.

## I. Background

On July 6–7, 1999, James Delario Williams was tried in a bench trial in the Circuit Court for Kent County for the

distribution of cocaine.[1]   The charges stemmed from a November 18, 1998 execution of a search and seizure warrant by the Kent County Narcotics Task Force at an apartment in Rock Hall. Thomas Brown (the lessee), Kenneth Cunningham (a houseguest), and Ronald Dorsey (a visitor) were in the apartment at the time the warrant was executed and various amounts of rock and powder cocaine were seized.[2]   All three men were arrested and charged with distribution of cocaine.

The State subsequently charged the appellant, James Delario Williams, with distribution, alleging that Williams entered the surveilled premises approximately thirty minutes prior to the raid to deliver powder cocaine to Cunningham.   The State's case relied heavily on the testimony of Brown, who testified as a result of a plea agreement with the State. Brown claimed that Williams entered the apartment prior to the raid, threw a package wrapped in foil, which Brown presumed to be cocaine, on the kitchen counter, and stated, "take whatever off the top."   Brown further testified that Cunningham took the package to his bedroom,[3] and when he returned to the kitchen, handed Brown some powder cocaine to cook to transform the powder into rock cocaine.

Trooper Wilson, one of the surveilling officers on the Narcotics Task Force, was the only other State's witness to place Williams at the apartment on the night of the raid.[4]   The

---

**1.**   Williams was also initially charged with conspiracy to distribute cocaine and distribution of cocaine within 1000 feet of a school; however, at the conclusion of the State's case, the trial judge granted Williams's motion for a judgment of acquittal on these charges and proceeded on the sole count of distribution.

**2.**   The Narcotics Task Force seized thirteen baggies of rock cocaine and a small amount of powder cocaine.

**3.**   Brown had allowed Cunningham to stay in his apartment for approximately 3 weeks without rent, but with the understanding that Cunningham would supply Brown with cocaine free of charge.

**4.**   The testimony of the other witnesses for the State pertained to establishing the basis for the search and seizure warrant of the apartment (Willaim Dwyer), and explaining the general activities of the Task Force before and during the raid (Sergeant Perot).

defense counsel, on several occasions, had asked the State's Attorney for confirmation (and reconfirmation) that Trooper Wilson was not able to say, beyond a reasonable doubt, that the man who entered the apartment was Williams. On March 5, 1999, defense counsel requested (although not required to make such requests under the mandatory disclosure provisions of the rule), pursuant to Rule 4–263(a)(2)(C), any relevant material or information regarding pretrial identifications of the Defendant by a witness for the State. In response, the State filed its automatic discovery, which stated that "the Defendant has not, at this time, been identified by a pre-trial identification procedure."

On May 5, 1999, defense counsel filed a Motion to Suppress for unlawful extrajudicial identifications [5] and in a cover letter requested further confirmation that there were no extrajudicial identifications of Williams: "please confirm in writing that there were no such identifications, and I will withdraw that portion of the motion." Immediately prior to the scheduled motion hearing, the State verbally professed that the police officer's testimony was not an identification under Rule 4–263 because the officer was only testifying to the general description of a man who entered the surveilled premises.

As a result of this assertion by the State, the defense counsel, at the motion hearing, requested that the court first rule on whether the testimony of the officer was an identification requiring disclosure under Rule 4–263. Defense counsel agreed that a general description of the man who entered the apartment would not amount to an identification under the rule. Defense counsel further argued, however, that should

---

**5.** Defense counsel was originally contesting the method by which Trooper Wilson first became introduced to Williams, namely, the use of a confidential informant and a subsequent review of his mug shot. The State claimed that a confidential informant had pointed Williams out to Trooper Wilson one month prior to the raid and that Trooper Wilson had subsequently returned to the station to view a mug shot of Williams. These encounters were presumably the subject matter of the suppression motion. Because the motion was rendered moot by the State's proffer that there was no identification of Williams on the night of the raid, we are left to speculate.

Trooper Wilson's testimony move beyond a general description to a statement that Williams met those descriptions or that the trooper recognized the man to be Williams, then the identification information would be subject to judicial scrutiny.

The State proffered to the court that the police officers, surveilling the apartment from across the street, saw an individual drive up to the apartment building in a vehicle similar to the description of the defendant's. Trooper Wilson also observed "the stature, the size, the height and definitely that it was an African American individual ..." The State affirmed to the court that "it wasn't even a situation where the officer can say that he saw the face of the person who went in there."

The court then specifically asked the State, "Does that basically mean that no one saw ... the officer can not say beyond a reasonable doubt that this person is the defendant?" To which the State responded, "That is correct. All he [Trooper Wilson] can say is the size, height, stature." [6] Based on these proffers by the State—that all the officer could identify is size, height, and stature—the court found that there was no pre-trial identification and that the State had complied with discovery. With a finding that no pre-trial identification existed, defense counsel's motion to suppress the extrajudicial identification was rendered moot.

In an unrelated pre-trial motion hearing, the State again repeated that "Wilson can identify defendant only to the extent of size, height, and weight," and recognized that this was "a major concession in [the] case."

Despite at least three proffers by the State's Attorney prior to trial that Trooper Wilson was only able to describe the size, height, and race of the man who entered the surveilled apart-

---

**6.** The State's Attorney subsequently provided a handwritten addendum to his Supplemental Answer in Response to Defense's Motion for Discovery and Inspection in which he noted that Trooper Wilson could not identify the face of the individual seen entering and leaving the apartment but that he could describe that person's general size and weight.

ment and was not able to specifically identify Williams, when Trooper Wilson took the stand, he distinctly stated, "it was Mr. Williams who is seated at the defense table." Defense counsel objected to this identification testimony by Trooper Wilson and throughout the ensuing colloquy repeated her objections and requested remedial measures be taken by the court, including moving to strike the identification testimony on two occasions,[7] renewing a motion to dismiss, and requesting that an evidentiary hearing be conducted. The trial judge denied these motions.[8] After Williams was found guilty, defense counsel moved for a new trial arguing, among other things, that the State violated Rule 4–263 by failing to disclose the identification testimony of Trooper Wilson. Again, the trial judge denied the motion with the following comment:

> The ... out of court identification of ... Trooper Wilson was a surprise to the State's Attorney and you feel that ... under Rule 4–263 he should have informed you. And I agree with you on that. But, if it was a surprise to him, he couldn't inform you of something he didn't know about. It was a surprise to you and to him. And I don't think that he deliberately withheld it back. I asked him point blank again was it a surprise, and he indicated it was. So I don't think that all of this taken together warrants a new trial.

The trial court sentenced Williams to twenty years incarceration, suspending all but ten years to serve without the possibility of parole, and five years supervised probation. In an unreported opinion by the Court of Special Appeals, the judgment of conviction was affirmed.

---

**7.** Defense counsel moved to strike the identification testimony of Trooper Wilson that pertained to his use of a confidential informant when encountering Williams for the first time and his subsequent viewing of a mug shot of Williams, the very material that presumably would have been the subject matter of the pre-trial motion to suppress the unlawful extrajudicial identification. *See supra* note 5.

**8.** Defense counsel was permitted to ask about dialogue between the State's Attorney and Trooper Wilson on cross-examination of Trooper Wilson; however, she was never given the opportunity to question the State's Attorney regarding his knowledge.

This Court granted certiorari to determine whether the State violated Rule 4–263(a)(2)(C) by inaccurately representing [9] to defense counsel during discovery that a police officer witness could not specifically identify the defendant, when at trial, the officer made a positive identification of the defendant.

## II.  Standard of Review

■■■■       Where the trial judge made no specific finding as a matter of law that the State violated the discovery rule, we exercise independent *de novo* review to determine whether a discovery violation occurred.  *See Ferris v. State*, 355 Md. 356, 368–369, 735 A.2d 491, 497 (1999) (maintaining that questions of law are reviewed *de novo); see also, Hutchins v. State*, 339 Md. 466, 475, 663 A.2d 1281, 1286 (1995).  If the trial judge erred because the State did in fact violate the discovery rule, we consider the prejudice to the defendant in evaluating whether such error was harmless.  *See Johnson v. State*, 360 Md. 250, 269, 757 A.2d 796, 806 (2000).

## III.  Maryland Rule 4–263

■■■       Maryland Rule 4–263 grants the defendant broad discovery rights to information held by the State.[10]  Part (a) of

---

**9.**  Because a trial court's factual findings are not upset unless clearly erroneous, we shall proceed on the basis of the trial judge's finding that the State's Attorney's inaccurate representation was inadvertent.  We acknowledge, however, what appears to be a contradiction in the record.  The State's Attorney claimed that the positive identification testimony of Trooper Wilson surprised both him and the defense.  Yet Trooper Wilson testified on cross-examination that he had told the State's Attorney in March of 1999, that he recognized the person as Jimmy Williams.

**10.**  The matters not subject to discovery by the defendant are provided in part (c) of Rule 4–263:

(1) Any documents to the extent that they contain the opinions, theories, conclusions, or other work product of the State's Attorney, or

(2) The identity of a confidential informant, so long as the failure to disclose the informant's identity does not infringe a constitutional

Rule 4–263 outlines the mandatory disclosure requirements in discovery:

> Without the necessity of a request, the State's Attorney shall furnish to the defendant:
>
> (1) Any material or information tending to negate or mitigate the guilt or punishment of the defendant as to the offense charged;
>
> (2) *Any relevant material or information regarding:* (A) specific searches and seizures, wire taps or eavesdropping, (B) the acquisition of statements made by the defendant to a State agent that the State intends to use at a hearing or trial, and (C) *pretrial identification of the defendant by a witness for the State.*

Maryland Rule 4–263(a) (emphasis added). Part (b) requires disclosure by the State upon request from the defendant,[11] but

---

right of the defendant and the State's Attorney does not intend to call the informant as a witness, or.

(3) Any other matter if the court finds that its disclosure would entail a substantial risk of harm to any person outweighing the interest in disclosure.

**11.** Part (b) of Rule 4–263 provides that upon request of the defendant, the State's Attorney shall:

(1) *Witnesses.* Disclose to the defendant the name and address of each person then known whom the State intends to call as a witness at the hearing or trial to prove its case in chief or to rebut alibi testimony;

(2) *Statements of the Defendant.* As to all statements made by the defendant to a State agent that the State intends to use at a hearing or trial, furnish to the defendant, but not file unless the court so orders: (A) a copy of each written or recorded statement, and (B) the substance of each oral statement and a copy of all reports of each oral statement;

(3) *Statements of Codefendants.* As to all statements made by a codefendant to a State agent which the State intends to use at a joint hearing or trial, furnish to the defendant, but not file unless the court so orders: (A) a copy of each written or recorded statement, and (B) the substance of each oral statement and a copy of all reports of each oral statement;

(4) *Reports or Statements of Experts.* Produce and permit the defendant to inspect and copy all written reports or statements made in connection with the action by each expert consulted by the State, including the results of any physical or mental examination, scientific

in neither case is the defendant required to show that the request was reasonable or the item sought was material to the preparation his defense.[12]

The State's compliance with these rules is never discretionary, as the Maryland Rules of Procedure have the force of law; *see Dotson v. State,* 321 Md. 515, 583 A.2d 710, 714 (1991); they are not mere guides but are "precise rubrics" to be strictly followed. *See State v. Cook,* 322 Md. 93, 103–04, 585 A.2d 833, 838 (1991) (quoting *State v. Ricketts,* 290 Md. 287, 292, 429 A.2d 1025 (1981)); *Jordan v. State,* 323 Md. 151, 169 n. 5, 591 A.2d 875, 884 n. 5 (Eldridge J., dissenting)(1991). Thus, when determining whether a discovery violation exists, we first look to the plain meaning of the rule.[13] *See Johnson v. State,* 360 Md. at 264–65, 757 A.2d at 804 (2000) (stating that "to effectuate the purpose and objectives of the rule, we look to its plain text" and further that if the words of the rule are unambiguous, "our inquiry ordinarily ceases and we need not venture outside the text of the rule").

---

test, experiment, or comparison, and furnish the defendant with the substance of any such oral report and conclusion;

(5) *Evidence for Use at Trial.* Produce and permit the defendant to inspect, copy, and photograph any documents, computer-generated evidence as defined in Rule 2-504.3(a), recordings, photographs, or other tangible things that the State intends to use at the hearing or trial;

(6) *Property of the Defendant.* Produce and permit the defendant to inspect, copy, and photograph any item obtained from or belonging to the defendant, whether or not the State intends to use the item at the hearing or trial.

**12.** This was not always so. Rule 728, (an earlier version of Rule 4–263) which became effective in 1962, required the defendant to show that "the item sought may be material to the preparation of his defense and that the request is reasonable." *See Patrick v. State,* 329 Md. at 31, 617 A.2d at 218 (1992)(internal quotations omitted).

**13.** We may also consider other persuasive sources beyond the text of the rule, particularly case law interpreting the rule in question. In *State v. Brown,* 327 Md. at 90, 607 A.2d at 927, we noted that Maryland Rule 4–263 was derived from former Maryland Rule 741; therefore our case law interpreting Rule 741 is also instructive. *See also Johnson,* 360 Md. at 265, 757 A.2d at 804.

■■■■■■■■

■■ The issue before us today—whether police surveillance observations are subject to the mandatory disclosure requirements of Rule 4–263(a)(2)(C)—is a novel question of law, requiring this Court, for the first time, to discuss the *scope* of the pretrial identification provision. We have often stated that the scope of pretrial disclosure requirements under Maryland Rule 4–263 must be defined in light of the underlying policies of the rule. *See Johnson v. State,* 360 Md. at 265, 757 A.2d at 804 (2000); *State v. Brown,* 327 Md. 81, 90, 607 A.2d 923, 927 (1992). Inherent benefits of discovery include providing adequate information to both parties to facilitate informed pleas, ensuring thorough and effective cross-examination, and expediting the trial process by diminishing the need for continuances to deal with unfamiliar information presented at trial. Specific to the mandatory disclosure provisions of Rule 4–263(a), the major objectives are to assist defendants in preparing their defense and to protect them from unfair surprise. *See Patrick v. State,* 329 Md. 24, 30, 617 A.2d 215, 218 (1992). The duty to disclose pre-trial identifications, then, is properly determined by interpreting the plain meaning of the Rule with proper deference to these policies.

Under Rule 4–263(a)(2)(C), "any relevant material or information regarding . . . pretrial identification of a defendant by a witness for the State" must be disclosed to the defendant. *See* Maryland Rule 4–263(a)(2)(C). Whether a police officer's surveillance observations are pretrial identifications contemplated by this disclosure requirement is the issue of contention. The State claims that Rule 4–263(a)(2)(C) is limited to state-orchestrated identification procedures, such as a photographic array, a show-up, or a line-up, because a purpose of the discovery disclosures is to "force the defendant to file certain motions before trial, including a motion to suppress . . ." and a police officer's surveillance observations would not be the subject of such a pretrial motion. *White v. State,* 300 Md. 719, 734, 481 A.2d 201, 208 (1984), *cert. denied,* 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 837 (1985). The State relies on this Court's recognition of the interrelationship between the discovery rules and the rules regarding filing of pretrial

motions to suppress or exclude illegally obtained evidence.[14] *See Bailey v. State,* 303 Md. 650, 655, 496 A.2d 665, 667 (1985); *Warrick v. State,* 302 Md. 162, 170, 486 A.2d 189, 193 (1985)(stating that the emphasis of mandatory discovery rules is on "moving the mass of criminal cases through the system by expediting pretrial suppression hearings and dispositions without trial").

We find the State's position faulty in two respects. First, the defense counsel, originally under the impression that Trooper Wilson could positively identify Williams, did, in fact, file a motion to suppress the extrajudicial identification of Williams in this case.[15] While defense counsel's motion became moot after the State's repeated assertions that Trooper Wilson could only describe the man's size, height, and race, the suppression motion-which the State decries is dispositive of a disclosure obligation-was, in fact, filed. Whether the suppression motion would have been successful is not of import, bringing us to the second point. Simply because we recognize the relationship between the discovery and pretrial motions rules, in that discovery is necessary so that mandatory pretrial motions can be filed, does not mean that we limit discovery to strictly that which may be utilized in support of a pretrial motion.[16] We articulated this proposition in *Warrick* when discussing relevancy as a limitation on a State's obligations in discovery:[17] "[R]elevancy is not limited to material

---

**14.** Rule 4–252(a) outlines the mandatory pretrial motions, including the motion to suppress an unlawfully obtained pretrial identification.

**15.** *See supra* note 5 for discussion of defendant's pre-trial suppression motion.

**16.** We have, in fact, determined that limiting the scope of disclosure was appropriate with respect to a defendant's statements made to third parties under Rule 4–263(b)(2) "[b]ecause statements made to third parties who are not State agents cannot ordinarily be the subject of a motion to suppress on the ground that they have been unlawfully obtained, they are not within the ambit of disclosure." *State v. Brown,* 327 Md. at 92, 607 A.2d at 928 (1992)(quoting *White v. State,* 300 Md. at 736, 481 A.2d at 209 (1984), *cert. denied,* 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 837 (1985)).

**17.** In *Warrick v. State,* when considering the limitations on the State's obligations in discovery, we addressed the use of the term "relevant"

or information which would tend to support a motion to suppress. Material or information is also producible under [Rule 4–263(a)(2)] [18] if it supports the State's proposed use of validly obtained material or information and the denial of a defendant's suppression motion." 302 Md. at 171, 486 A.2d at 193.

Generally speaking, discovery disclosures may, indeed, assist a defendant in determining whether certain motions can be filed prior to trial and thus expedite the trial process; however, the fact that discovery may advance that goal is not dispositive of other laudable goals. We have repeatedly insisted that discovery rules should assist the defendant in preparing a defense and protect him from surprise. One can hardly imagine a greater obstacle to an accused's defense than the State's declaration prior to trial that the only corroborating witness could not specifically identify the defendant, while the testimony of the witness at trial was nothing shy of a clear and positive identification—"it was Mr. Williams who is seated at the defense table ..." Identification testimony may be outcome determinative and hence, any solid preparation of a defense demands this information. Furthermore, unlike statements made by the defendant, *see generally, Johnson,* 360 Md. 250, 757 A.2d 796 (2000), identification testimony naturally comes from third parties. As such, it is information with which, absent the State's disclosure, a defendant may never be familiar until trial. To prevent unfair surprise, disclosure of identification testimony is required.

---

with respect to the Rule's designation that "any *relevant* material or information ..." be disclosed to the defendant. 302 Md. at 170–71, 486 A.2d at 193 (emphasis added). Mandatory disclosures are limited in three respects: (1) to the subjects listed in Rule 4–263(a)(2); (2) by that to which a State's Attorney's obligation extends under 4–263(i); and (3) the material must be relevant. *Id.* We explained that the limitation of relevancy, a limitation which courts traditionally apply, turns on the legal issues surrounding the facts and circumstances of each case. 302 Md. at 170–71, 486 A.2d at 193.

**18.** At the time *Warrick* was decided, Rule 4–263's precursor, Rule 741, was in effect.

██ Disclosure, in and of itself, would be immaterial if it is not accompanied by the necessary and intrinsic quality of accuracy. The State suggests that, despite the failure to accurately disclose that the officer could positively identify the defendant, Williams was provided with information that the officer observed someone with characteristics similar to the defendant's enter the apartment, i.e. a heavy-set African American man driving a Cougar, and therefore, Williams's position would have been no different.[19] This position is without merit.

The pre-trial assertion that Trooper Williams could not state, beyond a reasonable doubt, that the man he saw was Williams, and the in-trial positive identification are not mere variations of degree, but rather are contradictory. Regardless, when information is disclosed in discovery, it must be substantially complete and accurate. Without strict adherence to these inherent prerequisites to disclosing information, the purpose of discovery would be defeated. Substantial inaccuracy with respect to whether a State's witness can identify the accused is particularly disconcerting because, depending on the precision of the identification, the outcome of the trial may often be affected—the degree of identification testimony could mean the difference between an acquittal and a conviction.

██ This Court recently forbade the State from circumventing the pre-trial disclosure required by Rule 4–

---

**19.** The State relies on our decision in *Evans v. State,* 304 Md. 487, 499 A.2d 1261 (1985), for support. In *Evans* we affirmed the trial judge's determination to admit an photographic identification that the State inadvertently failed to disclose to the defendant. 304 Md. at 501–02, 499 A.2d at 1268. It was not, as the State now alludes, because the defendant was generally familiar with the fact that the witness would, to some degree, identify him. To the contrary, we explained that Evans's right to challenge the identification had not been completely lost because the trial judge entertained defense counsel's motion to suppress and conducted a full hearing on the motion. *Id.* The trial record in *Evans* revealed that all evidence necessary for a proper consideration of the suppression motion was placed before the court, and we perceived no prejudice to the defendant because of the alleged lack of time to prepare for the hearing. *Id.*

263(b)(2)(A) [20] by providing the defendant the "substance" of his oral recorded statement to a police officer. *See Johnson*, 360 Md. at 266–68, 757 A.2d at 805–06. We held that the State was obligated under the discovery rule to produce the actual recorded statement, regardless of whether it intended to introduce that recording at trial or simply have the officer testify as to his recollection of the content of the statement. *Id.* at 268, 757 A.2d at 806. Similarly, the State cannot circumvent Rule 4–263(a)(2)(C), mandating that pre-trial identifications be disclosed to the defendant, by offering only partially correct information.

We cannot allow the State to be the recipient of the unquestionable windfall that resulted from its own clear violation of the discovery rules. Contrary to the conclusions of the trial judge, "surprise" does not excuse or mitigate the prejudice to the defendant.[21] Maryland Rule 4–263(g) provides:

> The obligations of the State's Attorney under this Rule extend to material and information in the possession or control of the State's Attorney and staff members and any others who have participated in the investigation or evalua-

---

**20.** *See supra* note 11.

**21.** In denying the motion for new trial, the trial judge stated:

That ... the out of court identification of ... Trooper Wilson was a surprise to the State's Attorney and you feel that he should have informed you ... under Rule 4–263, that he should have informed you. And I agree with you on that. But, if it was a surprise to him, he couldn't inform you of something he didn't know about. It was a surprise to you and to him. And I don't think that he deliberately withheld it back. If he had, I would be very unhappy with him. But he ... today I asked him point blank again was it a surprise, and he indicated it was. So I don't think that all of this taken together would warrant the Court to grant a new trial.

It is unclear as to whether the trial judge used the State's inadvertence to find no discovery violation and thus deny Williams's motion, or whether the State's inadvertence was merely a factor in determining whether a new trial was an appropriate sanction. As we discuss in the text above, an inquiry into intent for purposes of determining whether a discovery violation occurred is improper. Furthermore, that the State's Attorney was "surprised" has no bearing on whether the defendant was prejudiced by the inaccurate representation.

tion of the action and who either regularly report, or with reference to the particular action have reported, to the office of the State's Attorney.

This provision clearly articulates that the State's Attorney was accountable for information held by Trooper Wilson, as he both "participated in the investigation" and "reported to the office of the State's Attorney." Recent case law confirms this conclusion. In *Robinson v. State*, 354 Md. 287, 730 A.2d 181 (1999), we maintained that the State is charged with the "knowledge of all seemingly pertinent facts related to the charge which are known to the police department . . ." *Id.* at 304, 730 A.2d at 190 (quoting *State v. Giles*, 239 Md. 458, 470, 212 A.2d 101, 108 (1965) *rev'd on other grounds*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967)(internal quotations omitted)). Therefore, whether the inaccurate representation was a result of willful aforethought or inadvertence is irrelevant because the determination of a discovery violation does not mandate inquiry into a party's mental state.

Nor is the effect of the inaccurate representation neutralized simply because the State's Attorney may have lacked foreknowledge of the ultimate testimony. As we stated in *Evans v. State*, "even an unintentional violation of the rule may require the granting of a mistrial if it has irreparably prejudiced a defendant." 304 Md. at 501, 499 A.2d at 1268 (1985). The United States Court of Appeals for the Fourth Circuit has similarly stated that the "[f]ailure of the police to reveal such material evidence in their possession is equally harmful to a defendant whether the information is purposely, or negligently, withheld. And it makes no difference if the withholding is by officials other than the prosecutor. The police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State's Attorney, were guilty of the nondisclosure." *Barbee v. Warden, Maryland Penitentiary*, 331 F.2d 842, 846 (4th Cir.1964).

If the State's Attorney's lack of knowledge could excuse, or even mitigate the prejudicial effect of the undisclosed information, States' Attorneys would most effectively operate in a

vacuum because, by removing themselves from the privity of police testimony and evidence, States' Attorneys could slip beyond the grasp of discovery rules by claiming ignorance, and thereby force the defendant to enter trial unaware of the evidence to be offered against him. This is intolerable and totally adverse to one of the avowed purposes for discovery rules: *to assist the defendant in preparing his defense and prevent unfair surprise at trial.*

It is clear that the discovery process in this case not only failed to assist Williams with his defense, but it failed to protect Williams from unfair surprise. Thus, the objectives of discovery were not realized. We conclude that Trooper Wilson's surveillance observation, if used by the State for purposes of identification, is "relevant material regarding a pretrial identification" under Rule 4–263(a)(2)(C) and disclosure is required. We hold that the State's failure to provide Williams with complete and accurate information regarding the extent to which Trooper Wilson, a witness closely identified with the State, could identify Williams is a violation of Rule 4–263(a)(2)(C).

Having determined that the State violated Rule 4–263(a)(2)(C), we must now determine whether such a violation was prejudicial to the defense.

### IV. Prejudicial Effect

The remedy under Maryland Rule 4–263(a)(2)(C) for a violation of the discovery rule is, in the first instance, within the sound discretion of the trial judge. *See Evans,* 304 Md. at 500, 499 A.2d at 1268. The exercise of that discretion includes evaluating whether a discovery violation has caused prejudice. *See Warrick,* 302 Md. at 173, 486 A.2d at 194. Generally, unless we find that the lower court abused its discretion, we will not reverse. In the case at hand, however, the trial judge made no specific finding as a matter of law that the State violated the discovery rule, and therefore he exercised no discretion in fashioning a remedy for the discovery violation. Having determined that the trial judge erred be-

cause the State did in fact violate Rule 4–263(a)(2)(C) by failing to accurately disclose the pretrial identification of the defendant, we must now consider whether that error was harmless. *Hutchins,* 339 Md. at 475, 663 A.2d at 1286.

Upon an independent review of the record, we must be able to declare, beyond a reasonable doubt, that the error in no way influenced the verdict; otherwise, reversal is required. *See Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976)(stating further that "such reviewing court must . . . be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict"). The State's failure to provide Williams with complete and accurate information regarding the extent to which Trooper Wilson, *the only corroborating witness identification* of the defendant, could identify Williams is prejudicial and cannot be construed as harmless error.

The inaccurate representation by the State in this case pertained to a fact pivotal to Williams's defense. Whether a witness can positively identify the accused at the scene of the crime is often the cardinal facet of a determination of guilt. The State's violation is particularly egregious because the only other testimony linking Williams to the charge for which he was being prosecuted came from Brown, an accomplice who testified pursuant to a plea agreement with the State. The longstanding law in Maryland is that a conviction may not rest on the uncorroborated testimony of an accomplice. *See Ayers v. State,* 335 Md. 602, 637–38, 645 A.2d 22, 39 (1994)(quoting *Watson v. State,* 208 Md. 210, 217, 117 A.2d 549, 552 (1955), when explaining that "the life or liberty of an innocent person might be taken away by a witness who makes the accusation either to gratify his malice or to shield himself from punishment, or in the hope of receiving clemency by turning State's evidence"); *Brown v. State,* 281 Md. 241, 243–44, 378 A.2d 1104, 1106–07 (1977) (quoting *Luery v. State,* 116 Md. 284, 292–93, 81 A. 681, 684 (1911)). Therefore, without a positive identification by Trooper Wilson, Williams could have had a

strong basis for moving for judgment of acquittal after the State rested its case.

The trial judge's verdict clearly reveals the great weight that was placed on Trooper Wilson's identification testimony in determining Williams's guilt. The trial judge stated:

> "Officer Wilson was probably one of the State's better witnesses, at least of any substantive information ... Officer Wilson indicated that he, from his surveillance operation, saw a person known to him as Jimmy Williams going to the place and driving a dark colored Cougar. That in itself certainly doesn't make Mr. Williams guilty of anything, but it does put Mr. Williams at the scene here of a known drug location...."

In fact, the trial court's findings and conclusions indicate that Trooper Wilson was the only other State's witness to place the defendant at the apartment prior to the raid,[22] which not only confirms the significance of Trooper Wilson's testimony, but suggests the gravity of the State's inaccurate representation.

Given the unquestionable reliance on Trooper Wilson's testimony, evidence which, had the trial judge ruled correctly as to

---

**22.** The trial judge reflected on each of the witnesses that testified. He stated that Deputy Dwyer gave an outline of how he got a lawful warrant for the premises at which the raid occurred; Sergeant Perot gave details of the raid itself, when it started, when it was completed, and list of activities that occurred in the interim; and Mr. Ronald Dorsey "didn't contribute anything."

Interestingly, at a post-conviction motion for new trial, the trial judge, when discussing the corroboration of Brown's testimony, stated:

> I do think that the testimony of Mr. Brown was-you say not even slightly corroborated and his testimony shouldn't have been regarded—I do think it was corroborated by Cunningham.

Therefore, to find corroboration, the trial judge sought the testimony not of a State's witness but rather of a defense witness. Cunningham, arrested with Brown on the night of the raid, was a defense witness who testified that Williams came by the apartment to pick up a tray of steamed crabs. This is an unacceptable means of corroborating accomplice testimony, particularly when one acknowledges the likelihood that the defense would never have called witnesses had either (a) Trooper Wilson's testimony been as the State originally proffered or (b) Trooper Wilson's identification testimony been subsequently stricken as a result of the discovery violation.

the State's disclosure violation, might not have been admitted, we are not satisfied that there is no reasonable possibility that the evidence complained of—the positive identification of the defendant by Trooper Wilson—may have contributed to the rendition of the guilty verdict. Quite to the contrary, when the pre-trial identification in question was the only corroborating testimony against Williams, we can say with confidence that it is likely that this error did, in fact, contribute to the rendition of a guilty verdict.

When a reviewing court cannot declare, beyond a reasonable doubt, that the State's failure to comply with Rule 4–263(a)(2)(C) in no way influenced the verdict, reversal is required.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR KENT COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR KENT COUNTY FOR A NEW TRIAL. COSTS TO BE PAID IN THIS COURT AND THE COURT OF SPECIAL APPEALS BY KENT COUNTY.*