Dissenting Opinion by McDonald, J., which Barbera, C.J., and Hotten, J., join. There is much in the meticulously rendered Majority opinion with which I agree. However, the Majority opinion interprets the discovery rule relating to a “pretrial identification of the defendant” in a way that is at odds with the language of the rule and that broadens its application well beyond an actual identification of the defendant. Accordingly, I cannot join the opinion and would affirm the well-reasoned opinion of the Court of Special Appeals on this issue. 231 Md.App. 53, 58-74, 149 A.3d 1159 (2016). As the Majority opinion indicates, Doris Carter was originally able to say that the confrontation on Principio Road involved a short, stocky (or stout) man and a tall, thin man and that the short, stocky man was the shooter. Despite her initial inability to make any identifications of either man, she later realized, and advised the prosecution at some point in advance of taking the stand, that she could identify Mr. Copeland as the tall, thin man. The Majority opinion characterizes this as a “pretrial identification” of Mr. Copeland, which seems fair. Majority op. at 155-60, 171 A.3d at 1195-98. I also agree that it is appropriate to refer to Mr. Copeland, as the Majority opinion does, as a “co-defendant” of Mr. Green, regardless of whether they were both charged in the same indictment or in separate indictments. Majority op. at 133-37, 171 A.3d at 1182-85. I also agree with the Majority opinion that the criminal discovery rule, Maryland Rule 4-263, does not require that the State make advance disclosure of a pretrial identification of a co-defendant, such as Mr. Copeland. Majority op. at 137-47, 171 A.3d at 1184-91. The Majority opinion then reasons, however, that Ms. Carter’s pretrial identification of Mr. Copeland was also “relevant ... information regarding .,. pretrial identification of [Mr. Green]” for purposes of Rule 4-263. Majority op. at 102, 160-61, 171 A.3d at 1164-65, 1198-99. This is where, in my view, the Majority opinion’s reasoning departs from the rule. In order for there to be “relevant ... information regarding ... pretrial identification of [Mr. Green],” there must be a pretrial identification of Mr. Green. What “pretrial identification of [Mr. Green]” is at issue here? There is no dispute that Ms. Carter did not place Mr. Green at the scene of the crime. So the Majority opinion cannot be referring to a pretrial identification of Mr. Green by Ms. Carter. Nor was there a pretrial identification of Mr. Green by another prosecution witness. As the Majority opinion recounts, two other witnesses observed parts of the confrontation on Principio Road, but neither of those witnesses identified either Mr. Green or Mr. Copeland.[1] Thus, there was no “pretrial of identification of [Mr. Green]” in this case. At trial, it was all the items of evidence, recounted in detail by the Majority opinion, that effectively proved that Mr. Green was the short, stocky man involved in the confrontation with Mr. Myers on Principio Road—a fact that Mr. Green confirmed in his own testimony. Ms. Carter’s identification of Mr. Copeland as the tall, thin man in that confrontation is one piece of the mosaic of relevant evidence that pointed to Mr. Green as the shooter.[2] But this piece of the mosaic was not a “pretrial identification of [Mr. Green].” And, without a pretrial of identification of Mr. Green, there cannot be, in the language of the rule, “relevant information” concerning a nonexistent pretrial identification of Mr. Green. The Majority opinion seeks to base its analysis on Williams v. State, 364 Md. 160, 771 A.2d 1082 (2001) and Collins v. State, 373 Md. 130, 816 A.2d 919 (2003). Both of those cases involved deficiencies in pretrial discovery concerning witnesses who were able to identify the defendant prior to trial and who made an identification of the defendant at trial. In Williams, the prosecution, in response to specific requests by the defense, inaccurately stated in pretrial discovery that the witness—a police officer who had conducted a surveillance— would not be able to identify the defendant. In Collins, the prosecution failed to timely disclose that a witness who made pretrial and in-court identifications of the defendant had initially been unable to make that identification. Neither case concerned discovery of an identification of a co-defendant, or other evidence that might inculpate the defendant but was not itself an identification of the defendant. Ultimately, the Majority opinion rests its holding on the proposition that, in this case, “a pretrial identification of a co-defendant [is] effectively the equivalent of a pretrial identification of the defendant.” Majority op. at 162, 171 A.3d at 1199. The Majority opinion reasons that, because Ms. Carter had described the shooter as short and stocky and the non-shooter as tall and thin, her identification of Mr. Copeland as the tall, thin man was effectively an identification of Mr. Green as the shooter. But the same could be said for Detective Lewis’ testimony that, at the time of the offense, Mr. Green was 5’7” and 190 pounds while Mr. Copeland was 5’11” and 160 pounds. That testimony also established that, in relation to each other, Mr. Copeland was the tall, thin man and Mr. Green the short, stocky man, and thus “effectively” identified Mr. Green as the shooter. In any event, it is easy for us to say, with the record of the entire trial before us (including Mr. Green’s own testimony), that Ms. Carter’s identification of Mr. Copeland or Detective Lewis’ testimony concerning the height and weight of the two men—or some other item of evidence pointing to Mr. Green as the shooter that was known to the prosecution in advance of trial—was “effectively” an identification of Mr. Green. It is quite another thing to create a rule of pretrial discovery based on that hindsight observation. What other sort of inculpatory evidence, viewed from that perspective, will be deemed to be “effectively the equivalent” of a pretrial identification of a defendant? In my view, the Majority opinion’s interpretation of the rule undermines the notion, frequently expressed by this Court, that the rule is a “precise rubric,”[3] and renders the rule’s application uncertain for those who must apply it without the benefit of hindsight.[4] Chief Judge Barbera and Judge Hotten have advised that they join this opinion. . Indeed, only Mr. Green himself in his own testimony definitively placed himself at the scene of the shooting. As the Court of Special Appeals noted, the pretrial discovery obligations of the prosecution under Rule 4-263 cannot be contingent on what testimony the defendant later gives at trial—which is likely to be unknown to the prosecution in advance of the trial. See 231 Md.App. at 73-74, 149 A.3d 1159. . It may well be that it would be fairer for the prosecution to disclose that piece of evidence sooner rather than later, as the prosecution was required to do with many other pieces of that mosaic (although not all inculpatory testimony is necessarily going to be revealed in pretrial discovery). Perhaps the discovery rule should be amended to encompass pretrial identifications of co-defendants. But that is not the question before us. . E.g., Williams, 364 Md. at 171, 771 A.2d 1082. . It is also notable that issue before us—Ms. Carter’s pretrial identification of Mr. Copeland—is a matter of pretrial discovery, not the admissibility of that evidence. Ms. Carter’s in-court identification of Mr, Copeland was clearly admissible. Mr. Green's counsel was free to cross-examine her about that identification in light of her failure to make any identifications in her initial interview with detectives—and did so. See Majority op. at 106-10, 171 A.3d at 1167-69. (As the trial judge was careful to confirm during the trial, Mr. Green's counsel had received the report of that interview in discovery). Ms. Carter’s identification of Mr. Copeland no doubt bolstered the prosecution case, but it was perfectly admissible evidence and, even if the timing of its disclosure somehow violated the discovery rule—which, for the reasons explained in the text, it did not—Mr. Green is hard pressed to show how he was harmed by it.